874 A.2d 597 (2005)
378 N.J. Super. 68
Monica RIVERS, Plaintiff-Appellant,
v.
LSC PARTNERSHIP; Central Sprinkler Corp.; Victaulic Company of America; Milwaukee Valve Co.; Kennedy Valve Co.; Totally Secure, Inc.; Affiliated Central, Inc.; Associated Fire Protection; Meadowlands Fire Protection; C.P. Painting, Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted May 11, 2005.
Decided June 7, 2005.
*598 Kleeblatt, Galler, Abramson & Zakim, attorneys for appellant (Richard P. Galler, Hackensack, and Dolores R. Petrovich, on the brief).
Craig M. Terkowitz, South Orange, attorney for respondent LSC Partnership (Fred Ira Eckhaus, East Brunswick, on the brief).
Corr, Stevens & Fenningham, attorneys for respondent Central Sprinkler Company (John C. Fenningham, Trevose, PA, and Gregory S. Berke, on the brief).
Braff, Harris & Sukoneck, attorneys for respondent Victaulic Company of America (Stephen L. Hopkins, Livingston, on the brief).
Lester Schwab Katz Dwyer, attorneys for respondent Milwaukee Valve Company (Scott L. Haworth, New York, NY, on the *599 brief and relying on the brief filed on behalf of respondent Kennedy Valve Co.).
Pitney Hardin, attorneys for respondent Kennedy Valve Company (Thomas C. Regan, Florham Park, and Denise L. Buerrose, on the brief).
Heim & McEnroe, attorneys for respondent Affiliated Central, Inc. (Joseph F. Skinner, Florham Park, on the brief).
Kevin A. Couch, attorney for respondent Associated Fire Protection.
Strongin, Rothman & Abrams, attorneys for respondent Meadowlands Fire Protection (Barry S. Rothman, New York, NY, and Martin S. Adler, on the brief).
Golden, Rothschild, Spagnola, Lundell, Levitt & Boylan, attorneys for respondent C.P. Painting, Inc. (Philip A. Garubo, Jr., of counsel; Scott R. Malyk, Pennington, on the brief).
Respondent Totally Secure, Inc. has not filed a brief.
Respondent Williams Construction-Selective Insurance Company has not filed a brief.
Before Judges NEWMAN, AXELRAD and R.B. COLEMAN.
The opinion of the court was delivered by
AXELRAD, J.T.C. (temporarily assigned).
Plaintiff Monica Rivers appeals from an order dismissing her complaint for personal injuries and property damage on summary judgment as to all parties. We affirm.
On May 10, 2001, plaintiff was using an acetone-based solution to soak off her acrylic nails, with a lit candle about five feet away. The candle sparked and ignited the bowl of acetone that was located on plaintiff's lap, causing a flash fire. The fire ignited her robe and nightgown, and spread to the couch where she was sitting. Her children, who were in the apartment at the time, came to her immediate aid and put out the fire with a fire extinguisher. The fire damage was restricted to the sofa on which plaintiff was sitting.
On March 15, 2002, plaintiff filed suit against LSC Partnership d/b/a Hamilton Square (LSC), the owner and manager of the building where plaintiff resided at the time of the incident. She claimed LSC was negligent in the installation and maintenance of the sprinkler system in her apartment, which was not activated by the fire, and in allowing the windows to be painted shut during prior exterior maintenance to the building. Plaintiff also asserted products liability claims against several fictitious defendants. According to plaintiff, she suffered significant burns and scarring to her body as a result of the fire. She also asserted a claim for psychological injuries, including constant anxiety attacks, fear of death, night tremors and insomnia. Plaintiff was hospitalized in the burn unit at St. Barnabas Medical Center from May 16, 2001 through June 7, 2001.
The case was assigned to Track 2 with a 300-day discovery period, which ran from either the first answer or ninety days after service on the first defendant, whichever came first. Pursuant to Rule 4:5A-2, plaintiff's counsel sought without success to have the case reassigned to Track 3 with a 450-day discovery period based on the products liability allegation. In May 2002 LSC filed an answer, and in response to a discovery request provided information that the fire system was tested and monitored by Affiliated Central, Inc. (Affiliated), the alarm monitoring service was Totally Secure, Inc. (Totally Secure) and C.P. Painting, Inc. (C.P. Painting), painted the exterior of plaintiff's apartment. On *600 August 19, 2002, plaintiff requested more specific answers to interrogatories.
By leave of court, in November 2002, plaintiff filed the first amended complaint naming as additional defendants Totally Secure, Affiliated, and C.P. Painting. Pursuant to a notice to produce, LSC provided additional documents on February 4, 2003.
On April 14, 2003, plaintiff was granted leave to amend the complaint for a second time to add defendants based on LSC's response to plaintiff's notice to produce and discovery was extended through September 30, 2003. Plaintiff filed a second amended complaint adding Kennedy Valve Company (Kennedy Valve), Victaulic Company of America (Victaulic), Milwaukee Valve Company (Milwaukee Valve), and Central Sprinkler Company (Central Sprinkler) as entities which manufactured components of the sprinkler system in plaintiff's apartment; and Associated Fire Protection (Associated Fire) as the party which maintained the sprinkler system.[1] Answers were filed by defendants and various motions to propound discovery were filed by plaintiff.
On July 17, 2003, plaintiff filed a motion to remove the case from its present discovery track, extend the discovery period, and schedule the matter for a case management conference. Plaintiff's counsel certified in support of the motion that the case was a complicated products liability matter involving several products, including one that caused a fire, in addition to a construction-related defect regarding a malfunctioning sprinkler. He further stated that he had only received information regarding the manufacturers in February 2003, and it had taken over a year to receive the information needed relative to the general contractors, the sprinkler system installer and the manufacturers of different components of the sprinkler system. Counsel also stated that several defendants had not filed answers to the April 2003 amended complaint or had only done so recently; thus, he might identify additional defendants through extended discovery. Accordingly, plaintiff's counsel requested a case management conference which was denied without prejudice by Judge Sabbath on August 25, 2003, based on insufficiency of counsel's certification. The court also denied the change of track request and extension of discovery as precluded by Rule 4:5A-2(b).
On September 26, 2003, summary judgment was granted in favor of Totally Secure and unopposed by plaintiff. In September 2003, the file was transferred by plaintiff's counsel to another law firm. On September 24, 2003, plaintiff's successor counsel filed a motion for leave to file a substitution of attorney, amend the complaint for the third time and extend discovery by 120 days, stating that defendants Victaulic, Kennedy Valve, Affiliated, and Meadowlands had not responded to plaintiff's discovery requests. The motion was returnable October 10, 2003, which was after the discovery end date of September 30, 2003. Defendant LSC opposed extension of the discovery period, certifying that plaintiff had adjourned her deposition at least six times. LSC also noted that the original discovery end date of July 30, 2003 had already been extended to September 30 by Judge Sabbath's order. Plaintiff's counsel had never identified any expert or provided any report implicating any of the named defendants in either a products liability or negligence cause of *601 action. Nor had he provided any expert medical report regarding the claimed physical and psychological damages resulting from the accident.
Defendants Central Sprinkler, Kennedy Valve and Associated Fire also opposed the motion based on similar arguments. Central Sprinkler submitted an expert report prepared by John G. O'Neill, P.E., of the Protection Engineering Group, which found that the fire did not result in sufficient heat to raise the temperature around the sprinklers in the living room to their activation point and that the temperature ratings of the sprinklers were in accordance with applicable codes and standards. The report concluded that heat from the fire, although intense enough to quickly result in the burn injuries received by plaintiff, never raised the temperature at the ceiling to activate the 155 F temperature-rated sprinklers, evidenced by the ceiling directly above the fire not requiring repainting due to soot or blistering from flames.
Judge Sabbath signed an order granting plaintiff's substitution of attorney and allowing plaintiff to file an amended complaint within twenty days, but denying any extension of discovery. The judge noted there had been 512 days of discovery since the filing of the complaint and since plaintiff's motion was made returnable after the discovery end date, the "exceptional circumstances" test applied in accordance with Rule 4:24-1(c) and Vitti v. Brown, 359 N.J.Super. 40, 818 A.2d 384 (Law Div.2003). He stated that the extension request was primarily based on the fact that prior counsel did not complete discovery, but incomplete discovery and substitution of counsel alone did not constitute "exceptional circumstances." Moreover, the judge found prior counsel's failure to obtain an expert report or retain an expert to be an insufficient reason for an extension.
Plaintiff's third amended complaint was filed on October 29, 2003, naming Williams Construction as an additional defendant. Between November 3 and December 1, 2003, defendants Kennedy Valve, Victaulic, Meadowlands, LSC, Central Sprinkler, Associated Fire, and C.P. Painting filed motions for summary judgment. Among the bases asserted were plaintiff's failure to identify the products and set forth the nature of the respective defects or to identify an expert or provide any expert reports as to the respective defendant's duty, breach and causation of plaintiff's injuries.
On November 13, 2003, plaintiff's counsel sought reconsideration of the previous order denying her request to extend discovery and re-track the case. She included certifications from plaintiff's prior counsel which stated, for the first time, that his mother became extremely ill after being diagnosed with a blood infection on July 4, 2003, he was her primary caretaker and his mother passed away on July 29. He did not work in July or August 2003 except for criminal case emergencies and did not have an associate in the office who could handle the caseload until he returned to work on September 3, 2003.
The various defendants opposed this motion. More particularly, Central Sprinkler noted that the identity of the manufacturer was imprinted on the portion of the sprinkler heads protruding from plaintiff's living room ceiling, which her prior counsel easily could have ascertained early in the discovery period. C.P. Painting contended that plaintiff failed to assert any theory of causation as to how the windows, which were alleged to have been painted shut, in any way were a factor in the occurrence of the accident. Defendants also challenged the lack of specificity linking them to the causes of action asserted, absence of expert reports regarding any aspect of the claim, and disputed that plaintiff could rely *602 upon circumstantial evidence or the doctrine of res ipsa loquitur instead of presenting direct evidence of the existence of negligence or a product defect.
Judge Sabbath heard oral argument on January 23, 2004 on plaintiff's motion to reconsider the denial of extension of discovery and defendants' summary judgment motions. Defendants at the hearing were Victaulic, Affiliated, Central Sprinkler, Meadowlands, Associated Fire, C.P. Painting, and Milwaukee Valve.[2] The court rejected plaintiff's res ipsa loquitur argument and granted summary judgment to all defendants for lack of expert testimony demonstrating a prima facie case of negligence or products liability. Judge Sabbath noted that more than 500 days of discovery had passed with little more than identification of the parties by plaintiff. Furthermore, plaintiff filed the motion in late September, returnable in October, even though the extended discovery end date was September 30, 2003. On July 29, 2003, all counsel had been reminded of the discovery end date by court notice. Furthermore, a mandatory arbitration date of December 12, 2003 had already been scheduled.
Judge Sabbath discounted the argument that plaintiff's prior counsel was stymied in his discovery by LSC, noting that the sprinkler heads visibly imprinted with the manufacturer's name had been accessible to plaintiff from the outset. No explanation had been provided as to the reason her prior counsel had not followed up on this information. The judge further noted that plaintiff's deposition, though requested about eight times, was continuously postponed by her counsel. Judge Sabbath concluded that the large number of defendants alone did not make the case complex; for the most part, the case revolved around whether the fire should have activated the sprinkler system. Moreover, plaintiff's counsel should have known from the outset that this issue, as well as the claim that the windows being sealed shut proximately caused the accumulation of fumes, would need to be substantiated by an expert.
Additionally, Judge Sabbath noted
the unfortunate experience by [plaintiff's original counsel] with the loss of his mother came at the end of the discovery period where very little, if anything, had been done; that experts were not retained even for purposes of working on the case and they still have not been retained, much less providing reports. The allegation that there was lack of timely response to discovery is ... contradicted by the LSC response that was, in fact, timely. There's a lack of due diligence here....
One of the factors to be determined as indicated by a Court and the various opinions is when a party seeks to extend because of exceptional circumstances the party shall indicate what has been done up to that point to show due diligence. And in this case not only was there an absence of due diligence but the ... adjournment of plaintiff's depositions were, on six to eight occasions, was unconscionable.
This case needs . . . a do-over. . . . [Plaintiff's counsel] very forthrightly indicated that this plaintiff needs to embark upon a much more extensive period of discovery regarding identification of parties and so forth and has not even begun to retain experts for the purpose of providing reports and establishing a *603 liability threshold. And therefore, this is not a mere extension of discovery ... or a mere accommodation that was referenced in Tucci[3], that this is virtually starting the case entirely over.
Judge Sabbath further noted that he signed several orders amending the complaint and since plaintiff did not address discovery at those points, it was appropriate for him to assume discovery was not an issue. Counsel should not "file for an amended complaint to add a party or do anything else in a case, submit a form of order and then ignore the discovery aspects and then come back to court at a later time and say that the order was inappropriate, ineffective, or incomplete because the order did not address discovery."
Plaintiff's case was transferred back to her original counsel who filed this appeal. On appeal, plaintiff asserts:
POINT I
EXCEPTIONAL CIRCUMSTANCES EXIST IN THE INSTANT CASE THAT WARRANT THE EXTENSION OF DISCOVERY IN THIS COMPLEX ACTION IN ACCORDANCE AND PURSUANT TO RULE 4:24-1(c).
POINT II
DUE TO THE JOINDER OF NEW PARTIES TO THIS ACTION PURSUANT TO RULES 4:8-1, 4:24-1(a) and (b), DISCOVERY MUST BE EXTENDED AT LEAST AN ADDITIONAL 60 DAYS.
POINT III
THERE EXISTS A GENUINE ISSUE OF MATERIAL FACTS AND THEREFORE ALL DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT SHOULD HAVE BEEN DENIED BY THE LOWER COURT.
We are not convinced by any of these arguments.
Prior to the adoption of Best Practices in September 2000, the parties were to complete their discovery within 150 days, a deadline seldom, if ever, observed. Zadigan v. Cole, 369 N.J.Super. 123, 129, 848 A.2d 73 (Law Div.2004). The Best Practices initiative arose in great part to address the evident delay in trying cases caused by litigants' failures to complete discovery in a timely fashion. Id. at 130, 848 A.2d 73. A new rule, Rule 4:5A, required most civil actions filed in the Superior Court to be assigned to one of four tracks and Rule 4:24-1 was amended to provide discovery periods for each track, which were expanded substantially. Vitti v. Brown, 359 N.J.Super. 40, 44, 818 A.2d 384 (Law Div.2003). After the adoption of Best Practices, "applications to extend the time for discovery should be the exception and not the rule." Id. at 45, 818 A.2d 384. In this context, Rule 4:24-1(c) was amended, providing that "[a]bsent exceptional circumstances, no extension of the discovery period may be permitted after an arbitration or trial date is fixed." Ibid.
Although the rule does not provide a specific definition of "exceptional circumstances," in Vitti the court likened the term to "extraordinary circumstances" which we defined in Flagg v. Township of Hazlet, 321 N.J.Super. 256, 260, 728 A.2d 847 (App.Div.1999), noting the term "in common parlance, denotes something unusual or remarkable." Vitti, supra, 359 N.J.Super. at 50, 818 A.2d 384.
In order to extend discovery based upon "exceptional circumstances," *604 the moving party must satisfy four inquiries: (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time. Id. at 51, 818 A.2d 384.
"Any attorney requesting additional time for discovery should establish that he or she did make effective use of the time permitted under the rules. A failure to pursue discovery promptly, within the time permitted, would normally be fatal to such a request." Ibid. Additionally, an excessive workload, reoccurring problems with staff, or delays arising out of efforts to resolve a matter through negotiations are not sufficient to justify an extension of time. Ibid.
In Tucci, supra, 364 N.J.Super. at 53-54, 834 A.2d 448, we held that late service by plaintiffs of their expert report did not warrant dismissal of their negligence action based on their counsel's reasonable reliance on the cooperation of his adversaries who did not object to the submission thirty-nine days after the deadline and his personal situation by reason of his mother's terminal illness and death.
In contrast, where the "delay rests squarely on plaintiff's counsel's failure to retain an expert and pursue discovery in a timely manner," and the Vitti factors are not present, there are no exceptional circumstances to warrant an extension. Huszar v. Greate Bay Hotel & Casino, Inc., 375 N.J.Super. 463, 473-74, 868 A.2d 364 (App.Div.2005). In that case, the plaintiff's counsel gave no excuse other than defendant's failure to provide correct information identifying the elevator in which plaintiff was injured. We held this did not excuse the delay in plaintiff's deposition after the discovery period had expired or indicate why plaintiff had failed to retain an expert or to pursue other discovery during the discovery period. Id. at 473, 868 A.2d 364.
The exceptional circumstances standard of Rule 4:24-1 is designed to deal with the problems created when requests for discovery are presented out of time, creating the possibility of delay. Montiel v. Ingersoll, 347 N.J.Super. 246, 249, 789 A.2d 190 (Law Div.2001). As this impacts the scheduling of arbitration and trial, a "much more substantial showing is required to justify an extension of discovery once a case has been scheduled for arbitration or trial." Ibid.
Plaintiff relies heavily on O'Donnell v. Ahmed, 363 N.J.Super. 44, 51, 830 A.2d 924 (Law Div.2003), where the court articulated instructive examples of extraordinary circumstances, such as death of a family member, death or health problems of a key witness, or a personal sudden health problem. The court went on to note that "failure to properly prepare a matter in a timely manner is not exceptional circumstances. . . . Additional facts must be shown in a detailed certification to the court, making clear that the reasons were beyond the reasonable control of the party seeking relief." Id. at 52, 830 A.2d 924. The court concluded that the adjournment of the trial was not due to the status of discovery, but rather the unavailability of the defense counsel. Ibid.
We generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law. Payton v. New Jersey Tpk. Auth., 148 N.J. 524, 559, 691 A.2d 321 (1997) (citations *605 omitted). We discern no abuse of discretion or misapplication of the law in Judge Sabbath's refusal to further extend the discovery period in this case. Smith v. Estate of Kelly, 343 N.J.Super. 480, 503, 778 A.2d 1162 (App.Div.2001); Serenity Contracting Group, Inc. v. Borough of Fort Lee, 306 N.J.Super. 151, 158-59, 703 A.2d 352 (App.Div.1997), certif. denied, 153 N.J. 214, 708 A.2d 65 (1998).
By the time of the motion, plaintiff already had been given far more than the 300 days of discovery permitted by Track 2. All that was apparently done was to join various defendants rather than attempting to determine if plaintiff had a viable claim. Plaintiff never retained an expert to establish that the sprinkler system either had a manufacturing defect or was not maintained, causing it to malfunction. This is not a situation where expert reports were ready to be served and plaintiff just needed a short extension to do so. There was not even a proffer as of the January 2004 motions that experts had been retained. The only expert opinion of record, retained by the sprinkler system company, opined that because of the nature of the fire and the rapidity with which it was doused, the ambient temperature of the room did not rise to the level necessary to activate the sprinkler system. Additionally, there was no suggestion that the sealed windows prevented plaintiff's exit from the room; thus, the only conceivable claim regarding the windows would be that their condition caused or contributed to the build up of acetone vapors in the room, causing the explosion and fire. This would clearly be outside of the ken of the average juror.[4]
The Tucci case is inapposite other than both plaintiffs having an ill mother in need of care. In the present case, had plaintiff's original counsel's mother been ill earlier in the discovery period and his care-giving lasted over an extended period of time, it might have warranted relief. However, that is not what happened here. Although death of a family member of counsel is one of the examples of "exceptional circumstances" in O'Donnell, no valid explanation was provided by plaintiff's counsel here for his lack of due diligence during the year prior to his mother's one-month terminal illness and death at the end of the discovery period.
Plaintiff further claims that, pursuant to Rule 4:24-1(a) and (b), automatic extensions of discovery for at least sixty days occur when a complaint joins a new party. However, Rule 4:24-1(b), in referring to "added parties," states, "[t]he joinder of a new party shall extend the period for discovery for 60 days, which may be reduced or enlarged by the court for good cause" and the comments also note the "[g]rant of the extension requires good cause shown."
Judge Sabbath found
[t]he allegations ... that there should have been an additional 60 days is disproved by virtue of the fact that these amended complaints were based upon captions versus references in the body of the complaint issues.
No "new" defendants were added in the third amended complaint. The third amended complaint named Williams Construction in the caption, although it is in the body but not the caption of the second amended complaint. Additionally, Meadowlands is in the captions of both the second and third amended complaints, but only in the body of the third complaint. *606 Plaintiff's interpretation of an "automatic" extension for adding a party is not the intent behind the rule. Otherwise, a plaintiff could purposefully omit a party and simply "amend" the complaint to allow for more discovery time.
Plaintiff's following broad generalization is insufficient to defeat defendants' motions for summary judgment:
The respective liabilities/nonliabilities of [defendants] has not yet been ascertained and may only be established through further discovery, the full discovery of all contractors and sub-contractors and [through] attainment of an expert. Furthermore, there still exists the possibility that through further investigation more defendants may be needed to be named in the within suit. There exists at least, the genuine issue of material fact as to the liability of the defendants and a jury should be permitted to decide based on the evidence.
Plaintiff had significant time to pursue her fishing expedition. The Best Practices "exceptional circumstances" requirement warranting an extension of discovery will not excuse the late request to secure expert reports, or as here, the absence of expert opinion to support plaintiff's liability claims, which is fatal to her case, where her counsel failed to exercise due diligence during the extended discovery period. We find no legitimate reason to second-guess the motion judge and subject defendants to further costs and unnecessarily prolong this litigation by further extending the discovery period.
Affirmed.
NOTES
[1] Although Williams Construction does not appear in the caption, it is named in the complaint's body as the general contractor for the complex. Meadowlands Fire Protection (Meadowlands) appears in the caption as a defendant but is not mentioned in the body of the complaint.
[2] Although Williams Construction appears in the body of the second amended complaint and in the caption of the third, there is nothing in the record to indicate if or when it was dismissed from the case.
[3] Tucci v. Tropicana Casino and Resort, Inc., 364 N.J.Super. 48, 834 A.2d 448 (App.Div.2003).
[4] On appeal, plaintiff does not challenge the substantive ruling regarding the necessity of expert reports to prove her causes of action. "The res ipsa loquitur doctrine is not available to product liability plaintiffs." Lauder v. Teaneck Volunteer Ambulance Corps, 368 N.J.Super. 320, 331, 845 A.2d 1271 (App.Div.2004) (citations omitted).