**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1875-17T1

RICHARD STAMLER,

 Plaintiff-Appellant/
 Cross-Respondent,

v.

ALVIN MILLER,

 Defendant-Respondent/
 Cross-Appellant.

_____

Argued December 19, 2018 – Decided January 11, 2019

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5419-14.

Robert B. Woodruff argued the cause for appellant/cross-respondent (Schiller, Pittenger & Galvin, PC, attorneys; James R. Korn, of counsel and on the briefs).

Rita F. Barone argued the cause for respondent/cross-appellant (Purcell Mulcahy & Flanagan, LLC, attorneys; Rita F. Barone and Bruce W. McCoy, Jr., on the briefs).

PER CURIAM

Plaintiff Richard Stamler appeals from an order of final judgment entered following a jury trial awarding him $138,322 in damages and finding him forty-seven percent negligent in this motor-vehicle-accident personal-injury matter. He also appeals from an order denying his motion for a new trial or, in the alternative, additur. Defendant Alvin Miller cross-appeals, arguing that if the jury verdict is reversed and the matter is remanded for a new trial, the court's orders permitting plaintiff's photogrammetry and liability experts to testify concerning certain subjects should be reversed. Based on our review of the record in light of the applicable law, we affirm the order of final judgment and the court's order denying plaintiff's motion for a new trial or additur and therefore find it unnecessary to address the issues raised on defendant's cross-appeal.

I.

Plaintiff filed a complaint alleging that on June 20, 2014, he was operating his motorcycle in the southbound lane of County Road 517 in Tewksbury and, at the same time, defendant operated his automobile in the northbound lane. The complaint alleged that when defendant attempted to make a left-hand turn across the southbound lane, plaintiff attempted to avoid defendant's vehicle and, "in

A-1875-17T1

doing so, [p]laintiff's motorcycle skidded and then slid on the roadway in the southbound lane."  Plaintiff alleged he suffered injuries that were proximately caused by defendant's negligence.

In March 2016, defendant served the initial report of his accident reconstruction expert, William J. Martin.  Thirteen months later, and a few weeks before the original May 16, 2017 trial date, plaintiff served the report of his liability expert, Marcus Mazza, P.E.  Due to court scheduling issues, the trial was adjourned until September 2017.  Defendant served plaintiff with supplemental versions of Martin's reports on May 23, 2017 and June 15, 2017.

Defendant moved to bar Mazza's testimony because his report was not timely filed prior to the original May 1, 2017 discovery end date and plaintiff failed to comply with Rule 4:17-7.  Plaintiff moved to bar Martin's testimony, arguing his opinions were improperly based on plaintiff's state of mind at the time of the accident.  In a July 2017 oral opinion, the court denied defendant's motion, finding the trial had been adjourned, defendant demonstrated no prejudice and the parties had time to depose Mazza prior to the rescheduled September 2017 trial.  The court also denied plaintiff's motion, concluding Martin's opinion was based on facts and calculations wholly independent of plaintiff's purported state of mind.

During his August 9, 2017 deposition, Mazza testified that his conclusions were based in part on data provided by a photogrammetry expert, Carrie O'Donel. Defense counsel requested discovery related to O'Donel's data, and deposed O'Donel on August 31, 2017. On September 6, 2017, defendant served a supplemental report from Martin in which he responded to Mazza's report and addressed information disclosed during Mazza's and O'Donel's depositions.

At the start of the trial on September 25, 2017, the court heard plaintiff's motion to bar any testimony from Martin that was based on his September 6, 2017 supplemental report. The judge denied the motion but limited Martin's testimony based on the report to rebutting Mazza's opinions on liability.

Plaintiff presented evidence showing that on July 20, 2014, he was driving his motorcycle on two-lane County Road 517 in Tewksbury with his friend Alfredo Ramirez, who rode his motorcycle nearly side-by-side with plaintiff. The road has one northbound and one southbound lane and, where the accident occurred, a twenty-five miles per hour speed limit. Plaintiff and Ramirez were in the southbound lane when plaintiff noticed a car, driven by defendant, cross over the double-yellow center line and begin to move directly toward him. Plaintiff applied the brakes within one second after seeing defendant's car and, when he did so, the motorcycle's front and rear wheels locked up, the vehicle

A-1875-17T1

slid out from under him and he skidded approximately forty feet on the road. Plaintiff recalled regaining consciousness underneath defendant's car, in significant pain, with injuries to the left side of his body, primarily his left leg and foot. Plaintiff's riding partner, Ramirez, brought his motorcycle to a gradual and controlled stop.

Plaintiff was taken to the hospital, where he remained for about three weeks. Following the accident, and prior to trial, defendant underwent several surgeries related to his injuries.

Plaintiff, who was employed as a sergeant at the Union County narcotics strike force, returned to work five months after the accident. By that time, plaintiff had exhausted his paid time off. Approximately two weeks after his return, plaintiff decided he could no longer work because of his injuries. He retired in February 2015.

Following the presentation of plaintiff's evidence, the court denied plaintiff's motion for a directed verdict on defendant's comparative negligence claim. Defendant then presented evidence, including Martin's expert opinion testimony concerning the manner in which plaintiff's operation of his motorcycle contributed to the cause of his injuries.

A-1875-17T1

The jury subsequently returned a verdict attributing fifty-three percent of the negligence to defendant and forty-seven percent to plaintiff. The jury awarded plaintiff $117,420 in non-economic damages and $20,902 in economic damages. The judge confirmed the verdict by polling the jury, but neither counsel requested further polling on any additional questions.

Plaintiff moved for a new trial or, in the alternative, additur. Plaintiff also asked the court to revisit its decision denying his directed verdict on the issue of comparative negligence. The court denied the motions. The court entered an order for final judgment that reflected the jury's comparative negligence finding and an order denying plaintiff's motions for a new trial or additur. Plaintiff appealed and defendant cross-appealed.

II.

Plaintiff raises three issues on appeal. He contends the court erred by denying his request to bar Martin from testifying based on information in his September 6, 2017 supplemental report. Next, he argues the court erred by denying his motion for a directed verdict on defendant's comparative negligence claim. More particularly, he argues defendant's comparative negligence claim is supported only by Martin's testimony, which is inadequate because Martin did not testify as to a standard of care and his opinion constituted an impermissible

6

net opinion. Last, plaintiff claims the court erred by denying his motion for a new trial or additur.

We are not persuaded by plaintiff's claim that the court erred by permitting Martin to testify based on information contained in his supplemental September 6, 2017 report. Plaintiff argues the report, and Martin's testimony based on it, should have been barred because the report was served following the May 1, 2017 discovery end date and just weeks prior to the trial. Plaintiff claims the submission of the report following the discovery end date violated Rule 4:17-7, which requires submission of a certification of due diligence supporting an amendment to interrogatory answers following the discovery end date, and Rule 4:24-1(c), which requires a showing of exceptional circumstances to extend the discovery end date after a trial date is fixed.

"We generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005) (citing Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997)). The "abuse of discretion" standard "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cty. Prosecutor, 171 N.J.

561, 571 (2002) (quoting <u>Achacoso–Sanchez v. Immigration & Naturalization Serv.</u>, 779 F.2d 1260, 1265 (7th Cir. 1985)). We must determine "whether there are good reasons . . . to defer to the particular decision at issue." <u>Ibid.</u>

Plaintiff submitted Mazza's report just prior to the May 1, 2017 discovery end date and, almost immediately thereafter, the trial was adjourned until September. Defendant moved to bar Mazza's testimony because the report was submitted in violation of <u>Rule</u> 4:17-7. In ruling on defendant's motion to bar Mazza's testimony and plaintiff's cross-motion to bar Martin's testimony, however, the court essentially extended the discovery period so Mazza's deposition could be taken.

The parties thereafter, and without objection, scheduled and participated in Mazza's August 2017 deposition, during which Mazza revealed for the first time that his opinion was based in part on information supplied by O'Donel. Documents were then immediately obtained from O'Donel and, again without objection, additional discovery was undertaken, including O'Donel's deposition. Within a week of O'Donel's deposition, defendant provided Martin's supplemental report. Although plaintiff moved to bar the report and any testimony based on it, plaintiff did not demonstrate he was prejudiced based on his receipt of the report three weeks prior to the commencement of the trial and

never requested an adjournment of the trial to address the report. <u>See, e.g.</u>, <u>Tucci v. Tropicana Casino and Resort, Inc.</u>, 364 N.J. Super. 48, 53-54 (2003) (finding the purposes of the Best Practices discovery deadlines – establishing credible trial dates and avoiding last minute trial adjournments – are not implicated where there is no request for an adjournment based on the late receipt of discovery).

Even assuming defendant did not comply with the requirements of either <u>Rule</u> 4:17-7[1] or <u>Rule</u> 4:24-1(c), the record shows plaintiff participated without objection in the depositions of Mazza and O'Donel following the discovery end date and the court's July 2017 ruling on the cross-motions to exclude Martin's and Mazza's testimony, and makes no showing of prejudice based on his receipt of Martin's supplemental report in September 2017. Thus, although counsel should have sought an extension of the discovery end date, "he reasonably relied on the cooperation of his adversaries who made no objection to the expert's inspection . . . after the . . . deadline." <u>Tucci</u>, 364 N.J. Super. at 53-54. The deadlines imposed in the discovery rules "were not designed to do away with

---

[1] In his letter providing Martin's supplemental report, defense counsel certified that "[p]ursuant to [<u>Rule</u>] 4:17-7" the submission of the report "was not reasonably available or discoverable by the exercise of due diligence prior to the discovery end date."

substantial justice on the merits or to preclude rule relaxation when necessary to 'secure a just determination.'" Ibid. (quoting Rule 1:1-2). We therefore discern no abuse of the court's discretion in allowing defendant's submission of Martin's supplemental report and Martin's testimony based on it.

Plaintiff next contends the court erred by denying his motion for a directed verdict on defendant's comparative negligence claim. The motion was founded on the argument that Martin improperly opined that plaintiff's "overbraking" caused his motorcycle's wheels to lock, which caused the motorcycle to fall and slide on the road to its final rest location. We are not persuaded.

In its determination of a motion for directed verdict at the close of the evidence, the trial court must "accept as true all evidence presented . . . and the legitimate inferences drawn therefrom, to determine whether the proofs are sufficient to sustain a judgment." Prioleau v. Ky. Fried Chicken, Inc., 434 N.J. Super. 558, 569 (App. Div. 2014), aff'd as modified, 223 N.J. 245, 258 (2015). The "court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Ibid. (quoting Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969)).

If reasonable minds could reach different conclusions, the motion must be denied. Id. at 570. However, if the evidence is such that one party must prevail as a matter of law, then a directed verdict is appropriate. Frugis v. Bracigliano, 177 N.J. 250, 269 (2003). We apply the same standard that governed the trial court when reviewing an order granting or denying a motion for a directed verdict. Ibid.

In the first instance, we do not consider plaintiff's argument that Martin's testimony concerning the cause of plaintiff's fall from the motorcycle constituted a net opinion because plaintiff did not object to the testimony at trial and the issue does not involve jurisdictional or public interest concerns. Zaman v. Felton, 219 N.J. 199, 226-27 (2014); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Moreover, the admission of Martin's testimony was not clearly capable of producing an unjust result on plaintiff's motion for a directed verdict because viewing the facts most favorably to defendant and putting aside Martin's opinion testimony that defendant's "overbraking" caused the motorcycle to fall and slide, there was substantial evidence supporting a finding that plaintiff's negligence contributed to the cause of the accident and his injuries.

Indeed, the evidence showed plaintiff never came in contact with defendant's vehicle and that his injuries were sustained solely as a result of his

11

motorcycle falling onto the roadway and sliding after he abruptly applied the brakes. There was evidence plaintiff was speeding, traveling at up to thirty-eight miles per hour in a twenty-five mile per hour zone, and that his front and rear wheels locked when he slammed on his brakes and his motorcycle fell to the ground. Moreover, there was evidence showing Ramirez, who was riding alongside plaintiff, abruptly applied his brakes but was able to come to a gradual and controlled stop. Thus, even if Martin's opinion about "overbraking" should have been excluded as a net opinion, there was more than a scintilla of evidence supporting defendant's claim that plaintiff's negligence contributed to the cause of the accident and his injuries. See Prioleau, 434 N.J. Super. at 569.

Plaintiff last argues that the court erred by denying his motion for a new trial or, in the alternative, additur. He claims he is entitled to a new trial because the jury's damages award is against the weight of the evidence and is impermissibly based on its finding of the percentage of plaintiff's comparative negligence. Defendant argues that the court correctly denied plaintiff's new trial motion because the jury's damages award is supported by the evidence and does not shock the judicial conscience.

"A new trial on damages should not be granted 'unless [the damage verdict] is so disproportionate to the injury and resulting disability as to shock

the court's conscience and convince it that to sustain the award would be manifestly unjust.'" Petitto v. Sands Hotel & Casino, Inc., 288 N.J. Super. 304, 308 (App. Div. 1996) (quoting Tronolone v. Palmer, 224 N.J. Super. 92, 97 (App. Div. 1988)). "[T]he evaluation of damages is a matter uniquely reposed in the jury's good judgment, and to justify judicial interference, '[t]he verdict must be "wide of the mark" and pervaded by a sense of "wrongness."'" Jastram v. Kruse, 197 N.J. 216, 229 (2008) (second alteration in original) (quoting Johnson v. Scaccetti, 192 N.J. 256, 281 (2007)).

The record must be viewed in a light most favorable to the party defending the verdict. Ibid. "It is only [where] . . . there has been a manifest miscarriage of justice, that corrective judicial action is warranted." Id. at 228 (quoting Baxter v. Fairmont Food Corp., 74 N.J. 588, 598 (1977)). "Although an appellate court must defer to the trial judge on witness credibility, demeanor, and 'feel of the case,' it determines for itself whether the record shows that there was a miscarriage of justice." Petitto, 288 N.J. Super. at 309 (quoting Dolson, 55 N.J. at 7); see R. 2:10-1 (providing that "[t]he trial court's ruling on . . . a motion [for a new trial] shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law").

A court is not required to grant a motion for a new trial because a party complains the damages award is too small. Anderson v. A.J. Friedman Supply Co., 416 N.J. Super. 46, 71-72 (App. Div. 2010). "A motion for a new trial . . . based on a claim that a jury award was against the weight of the evidence, should not be granted unless it 'clearly and convincingly appears' that the award was so deficient that it constitutes a 'miscarriage of justice.'" City of Long Branch v. Jui Yung Liu, 203 N.J. 464, 492 (2010) (quoting Baxter, 74 N.J. at 596 (1977)); accord Johnson, 192 N.J. at 281.

Measured against these standards, we are convinced the court correctly denied plaintiff's motion for a new trial on damages. The court applied the appropriate "miscarriage of justice" standard and summarized the evidence and testimony concerning plaintiff's economic and noneconomic damages that supported the jury's damages award. For example, the judge explained that plaintiff's expert included unnecessary costs in the calculation of the domestic service costs that were part of plaintiff's alleged economic damages, and there was evidence permitting the jury to conclude that plaintiff was not forced to retire and therefore not entitled lost income and other economic damages. The court further explained there was contradictory evidence concerning plaintiff's noneconomic damages that undermined his claim that he suffered from physical

limitations as a result of the accident, including testimony that defendant went to the gym three times a week, walked without a cane, and that his doctors said he made a great recovery.

In sum, the court found that the record supports the jury's damages award and does not shock the judicial conscience. We recognize there is no dispute plaintiff suffered injuries and that he sought a much larger damages award from the jury but, as detailed by the trial court, the damages awards find support in the conflicting evidence and do not constitute a manifest injustice. There is no basis in the record to reverse them. For the same reason, we affirm the court's denial of plaintiff's motion for additur. See Jui Yung Liu, 203 N.J. at 492 (applying the same standard for new trial motions based on a claim the damages award is against the weight of the evidence, to motions for additur).

Plaintiff also argues the economic damages award must be reversed because it is in the odd amount of $20,902, which is equal to fifty-three percent of one component of the various economic damages he claimed at trial. We find the argument is merely speculative and wholly devoid of merit.

Plaintiff's expert testified plaintiff sustained a total of $174,231 in past and future economic damages. The past economic damages totaled $50,885 that included lost earnings ($139,539) and lost sick and vacation time ($39,438)

which were offset by plaintiff's pension ($100,896), saved work expenses ($649) and tax savings ($26,547). The future economic damages claimed totaled $123,346, comprised of lost earnings ($236,676) that were offset by future pension costs ($48,139), work expenses ($1089) and taxes ($64,346).

Plaintiff correctly asserts that the jury's economic damages award of $20,902 is fifty-three percent of the $39,438 he claimed as economic damages for lost sick and vacation time. He reasons that because that percentage is identical to the percentage of negligence the jury attributed to defendant, the jury impermissibly molded its economic damages award to the percentage of defendant's negligence.

We first observe plaintiff raises this argument for the first time on appeal. He did not argue the jury impermissibly molded the verdict either before the jury's dismissal or on his motion for a new trial. Prior to the discharge of the jury, the court asked if the parties sought to poll the jury on any issues other than its verdict, and plaintiff declined. Although we do not address issues raised for the first time on appeal that do not involve jurisdiction or issues of public importance, see Zaman, 219 N.J. at 226-27, we offer the following brief comments.

We are not convinced the mere fact that the jury's economic damages award equates to the same percentage of a component of the claimed damages as the percentage of defendant's comparative negligence requires the conclusion that the jury impermissibly molded the verdict, or that the damages award resulted in a miscarriage of justice. Plaintiff's economic damages claim was multifaceted and contested, and the jury clearly rejected many components of the claim. We cannot divine the jury's logic and rationale based on a showing of nothing more than a coincidence and a theory based on speculation and conjecture. See Kzrykalski v. Tindall, 448 N.J. Super. 1, 11 (App. Div. 2016) (finding "no principled reason for second-guessing the jury's" damages award where "the extent and significance of plaintiff[s'] injuries [were] much in dispute"), aff'd, 232 N.J. 525 (2018); Boryszewski v. Burke, 380 N.J. Super. 361, 403 (2005) (determining it was not possible to "divine from the record how the jury may have assessed [the] separate injuries" claimed by three plaintiffs to whom the jury awarded identical damage verdicts other than to conclude it was a "coincidence"). Indeed, acceptance of plaintiff's position requires the illogical conclusion that the jury first determined he was entitled to $39,438 in sick and vacation benefits for the period prior to May 31, 2016, and incongruously decided he was not entitled to his claimed lost earnings during that same time.

17

"[T]he jury—not a judge—is charged with the responsibility of deciding the merits of a civil claim and the quantum of damages to be awarded a plaintiff." Cuevas v. Wentworth Grp., 226 N.J. 480, 499 (2016). "A jury's verdict, including an award of damages, is cloaked with a 'presumption of correctness.'" Id. at 501 (quoting Baxter, 74 N.J. at 598). "The presumption of correctness that attaches to a damages award is not overcome unless a defendant can establish, 'clearly and convincingly,' that the award is 'a miscarriage of justice.'" Ibid. (quoting Baxter, 74 N.J. at 596); see also Jui Yung Liu, 203 N.J. at 492 (applying this standard where the damages were alleged to be inadequate). "Once the jury is discharged, both trial and appellate courts are generally bound to respect its decision, lest they act as an additional and decisive juror." Kassick v. Milwaukee Elec. Tool Corp., 120 N.J. 130, 135-36 (1990). Plaintiff offers no basis for us to play the role of an additional juror, and we will not re-weigh the evidence and substitute our judgment for that of the jury and the trial judge. See Jastram, 197 N.J. at 235.

Any arguments asserted by plaintiff that we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Because we affirm the order for final judgment and the order

denying plaintiff's motion for a new trial or additur, it is unnecessary to address the issues raised in defendant's cross-appeal.

Affirmed. Defendant's cross-appeal is consequently dismissed as moot.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1875-17T1