**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1527-22

CAROL KARA, as Administratrix
of the Estate of ELEANOR R.
HOLLINGSWORTH,

     Plaintiff-Appellant,

v.

LINCOLN SPECIALTY CARE
CENTER, SK NURSING HOME
ASSOCIATES, LLC, and THE
SUITES AT LINCOLN,

     Defendants-Respondents.

_____

Submitted February 7, 2024 – Decided March 27, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0361-19.

Rosenbaum & Associates, PC, attorneys for appellant (John Francis Hanahan, on the brief).

Rosenberg Jacobs Heller & Fleming, PC, attorneys for respondents (Gayle M. Halevy, on the brief).

PER CURIAM

This matter involves a complaint alleging nursing home professional negligence brought against defendants Lincoln Specialty Care Center (Lincoln Specialty Care), SK Nursing Home Associates, and the Suites at Lincoln. Plaintiff Carol Kara, Administratrix of the Estate of Eleanor R. Hollingsworth, appeals from a January 6, 2023 Law Division order denying her application to re-open discovery and granting defendants' motion for summary judgment. After carefully reviewing the record in view of the governing legal principles, we conclude the trial court did not abuse its discretion in finding plaintiff failed to establish exceptional circumstances to re-open discovery after a trial date had been set. Accordingly, we affirm.

I.

We discern the following facts and procedural history from the record. On December 4, 2014, Hollingsworth—who had a history of diabetes mellitus, atrial fibrillation, hypertension, Parkinson's Disease, dysphagia, dementia, and osteoporosis—was admitted to Lincoln Specialty Care. She fell multiple times, including on August 21, 2016, and on June 9, 2017. December 2017 risk assessments indicated she was intermittently confused, had poor vision, and had an alteration in safety awareness due to cognitive decline. On January 9, 2018,

plaintiff expressed concerns to Lincoln Specialty Care staff about her mother using the bathroom by herself and trying to dress herself.

On January 31, 2018, Hollingsworth fell while trying to get out of bed during the night. She was admitted to Inspira Medical Center Vineland and diagnosed with an intertrochanteric fracture of her left hip and a comminuted fracture of her left shoulder across the humeral head. On February 3, 2018, Hollingsworth underwent surgery to repair the hip fracture. She passed away eight days later.

On June 14, 2019, plaintiff filed a professional negligence complaint arising from Hollingsworth's treatment and January 2018 fall. Defendants filed an answer on August 21, 2019.

Discovery deadlines were extended several times, partly because of the COVID-19 pandemic. On December 9, 2020, defense counsel requested dates for plaintiff's deposition. After defense counsel followed up four times without any response from plaintiff's counsel, on February 3, 2021, the parties agreed to ask the court to extend the discovery deadlines.

Plaintiff's deposition was scheduled for March 24, 2021. However, plaintiff did not confirm the deposition the day before and therefore it was adjourned. Defense counsel requested new dates for plaintiff's deposition and

A-1527-22

contacted plaintiff's counsel twice to reschedule the deposition but received no response. Plaintiff was not deposed until June 7, 2021.

On March 9, 2022, Rose Mattei, a nurse supervisor and Lincoln Specialty Care unit manager, was deposed via Zoom. She testified there were four other Lincoln Specialty Care staff members with knowledge of Hollingsworth's treatment. She also testified about an incident report regarding Hollingsworth's January 2018 fall, which included a written statement from "Heather," the nurse who found Hollingsworth on the floor. Mattei could not remember the nurse's last name.

During the deposition, an issue arose concerning that incident report. Plaintiff's counsel said, "I was trying to bring up [on a computer screen] the incident report to which you refer. And unfortunately, I had a little bit of trouble with that just now. [Defense counsel], do you have that available?" Defense counsel responded, "I don't have it on this desktop because I am on a personal computer, not a work computer. So I can't share it from where I am." Plaintiff's counsel continued, "Okay. [Mattei], I have other records that I will be showing you too. Unfortunately, I had a little difficulty with the incident report. All right, but let's talk a little more about that incident report."

4

On March 11, 2022, plaintiff's counsel emailed defense counsel asking for the incident report. Plaintiff also asked for "some proposed dates for depositions (or last known addresses)" regarding the four staff members Mattei identified in her deposition. On March 21, 2022, plaintiff's counsel sent a second email stating: "[p]lease provide me with some possible dates for depositions, or, please call me and we can go through the calendar." Defense counsel responded, "I believe last known addresses were previously provided."

On March 18, 2022, the trial court entered an order requiring plaintiff to produce expert reports by June 18, 2022. The court set a discovery end date (DED) of September 18, 2022.

In April 2022, defense counsel asked plaintiff's counsel to call and discuss a possible settlement. Plaintiff's counsel did not call. On June 3, 2022, plaintiff's counsel emailed defense counsel: "[b]ack in March, our office propounded the attached request for the incident report. To avoid motion practice, please supply the incident report within the next ten [] days."

On June 18, 2022, the expert report deadline passed without plaintiff submitting any expert reports. On July 12, 2022, defendants' insurance adjuster called plaintiff's counsel to discuss the claim. Plaintiff's counsel then sent an

5

email to defense counsel confirming the call and requesting the names of possible mediators. Defense counsel suggested a possible mediator.

On August 17, 2022, plaintiff's counsel emailed defense counsel: "[d]iscovery in this case is scheduled to end on October 18, 2022.[1] Please advise if you consent to a [m]otion to [e]xtend." Defense counsel responded: "[p]lease … call me." Plaintiff's counsel did not call or pursue the motion to extend.

On September 18, 2022, discovery ended. Plaintiff had not served any expert reports.

On September 20, 2022, plaintiff's counsel contacted defense counsel suggesting a potential mediator. On October 6, 2022, the court set a trial date of December 12, 2022.

On October 11, 2022, defendants filed a motion for summary judgment "based on the fact that this is a professional negligence case, that requires [p]laintiff to support her claims with expert opinions, and at the close of discovery, [p]laintiff had not yet served any expert reports."

---

[1] The correct DED was September 18, 2022.

A-1527-22

On November 2, 2022, plaintiff provided defendants with two expert reports.[2] On the same day, plaintiff also filed a motion to extend discovery based on extraordinary circumstances, even though the discovery period had already ended. On November 28, 2022, plaintiff filed a motion to re-open discovery.

In plaintiff's opposition to defendants' motion for summary judgment, plaintiff claimed she needed additional discovery "to take the depositions of the [four witnesses mentioned in Mattei's deposition] and obtain the incident report." Additionally, plaintiff's counsel claimed he missed the discovery deadline because counsel's staff "erroneously diaried the [DED] for October 18, 2022, instead of the correct end date of September 18, 2022."

---

[2] In one of the reports, expert Perry Starer, M.D., opined:

> In my opinion, to a reasonable degree of medical certainty, the failure of the staff of Lincoln Specialty Care Center to act within the standards of care resulted in Ms. Hollingsworth suffering fractures . . . and death. The staff of Lincoln Specialty Care Center clearly increased the risk of harm for Ms. Hollingsworth and caused her injuries. The staff of Lincoln Specialty Care Center failed to properly monitor Ms. Hollingsworth. . . . These injuries to Ms. Hollingsworth could have, within a reasonable degree of medical certainty, been prevented if the standards of care had been met.

A-1527-22

On December 28, 2022, defendants filed a response in opposition to plaintiff's motion. Defendants argued plaintiff did not establish the exceptional circumstances necessary to re-open discovery after the DED passed and a trial date had been set. Defendants further argued plaintiff's counsel had been "dilatory" and "not diligent" throughout the litigation.

On January 6, 2023, the trial court heard oral arguments on plaintiff's motion to re-open discovery. Plaintiff's counsel argued they "diligently pursued" discovery, that further discovery "is certainly essential," and that there was no prejudice to defendants. He also stated, "I thought I had [the incident report] at the time of taking [Mattei's] deposition. It turns out that I did not." Counsel continued:

> In terms of whether this was avoidable or unavoidable, certainly this is not due to the failure of my client. This is—you know, she is certainly innocent in all this. It is something that I, of course, as an attorney, if these deadlines had been on the calendar, I would have responded to them, but, unfortunately, it was just a clerical error. It's not something that the paralegal whose responsibility it is to put these on the calendar, it's not something that she specifically has any problems with. She's a very good paralegal. It was just an oversight on her part. So in terms of whether this— the exceptional circumstances standard was met, I believe that it was, Your Honor.

A-1527-22

The trial court applied the four-factor test set forth in <u>Vitti v. Brown</u>, 359 N.J. Super. 40 (Law Div. 2003), finding plaintiff did not meet her burden of establishing exceptional circumstances for re-opening discovery. <u>See</u> <u>R.</u> 4:24-1(c); <u>Vitti</u>, 359 N.J. Super. at 51. The trial court concluded:

> I'm going to deny the motion to [re-open] discovery. Again, I'm not happy about doing it. . . I feel bad for [plaintiff's counsel] and what he has to say to his client and the repercussions of that, but in this case—this case was not diligently pursued. It was pursued, but it wasn't diligently pursued. And the expert deadline to produce reports was in June. The reports weren't produced until five months later. This isn't a circumstance where, you know, it's a [thirty-day] delay. . . . This is a five-month delay and, again, the court provided the plaintiff with notices that [DED] was coming up and still nothing was done. . . . And the motion to extend discovery wasn't filed, even though that was an inappropriate motion to file at that point in time, but that wasn't even filed until a month after the summary judgment motion. . . . I just don't feel that it's appropriate for me to, at this point, [re-open] discovery.

The trial court thereupon denied plaintiff's motion to re-open discovery, granted defendants' motion for summary judgment, and dismissed plaintiff's complaint with prejudice, "as a result of plaintiff's failure to support its professional negligence claims with expert reports."

This appeal follows. In her merits brief, plaintiff contends the trial court abused its discretion by refusing to re-open discovery and granting summary

judgment, resulting in a manifest injustice. In her reply brief, plaintiff more specifically argues the trial court abused its discretion in finding defendants suffered undue prejudice from the delay in furnishing expert reports.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. "In reviewing trial court decisions related to matters of discovery, we apply an abuse of discretion standard." Conn v. Rebustillo, 445 N.J. Super. 349, 352 (App. Div. 2016). "That is, '[w]e generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion[,] or its determination is based on a mistaken understanding of the applicable law.'" Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (first alteration in original) (quoting Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005)). This deferential standard of review applies to discovery extensions. Ibid. "However, 'we review legal determinations based on an interpretation of our court rules de novo.'" Hollywood Café Diner, Inc. v. Jaffee, 473 N.J. Super. 210, 216-17 (App. Div. 2022) (quoting Occhifinto v. Olivo Constr. Co., 221 N.J. 443, 453 (2015)).

Rule 4:24-1 governs the time for completion of discovery in civil matters. Rule 4:24-1(c) allows parties to consent to a sixty-day discovery extension

"'prior to the expiration of the discovery period.'" Jaffee, 473 N.J. Super. at 217 (quoting R. 4:24-1(c)). However, "[i]f the parties do not agree or a longer extension is sought, a motion for relief shall be filed . . . and made returnable prior to the conclusion of the applicable discovery period." R. 4:24-1(c). "The 'good cause' standard applies to motions to extend discovery unless an arbitration or trial date is fixed." Tynes v. St. Peter's Univ. Med. Ctr., 408 N.J. Super. 159, 168 (App. Div. 2009) (emphasis added) (quoting Leitner v. Toms River Reg'l Schs., 392 N.J. Super. 80, 91-92 (App. Div. 2007)). Importantly for purposes of this appeal, Rule 4:24-1(c) states unequivocally, "[n]o extension of the discovery period may be permitted after an arbitration or trial date is fixed, unless exceptional circumstances are shown."

Here, discovery ended on September 18, 2022. On October 6, 2022, the court set a trial date of December 12, 2022. Plaintiff filed her motion to re-open discovery on November 28, 2022—fifty-three days after the trial date had been set. We conclude the trial court correctly determined the exceptional circumstances standard applies.

Rule 4:24-1(c) does not provide a specific definition of "exceptional circumstances." In Vitti, the court likened the term to "extraordinary circumstances," as defined in Flagg v. Township of Hazlet, 321 N.J. Super. 256,

11

260 (App. Div. 1999), noting the term "in common parlance, denotes something unusual or remarkable." Vitti, 359 N.J. Super. at 50. The court added, "[a]ny attorney requesting additional time for discovery should establish that he or she did make effective use of the time permitted under the rules. A failure to pursue discovery promptly, within the time permitted, would normally be fatal to such a request." Id. at 51.

We provided further explanation of the exceptional circumstances standard in Rivers, holding the movant must demonstrate:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.
>
> [378 N.J. Super. at 79 (citing Vitti, 359 N.J. Super. at 51).]

We added, "an excessive workload, reoccurring problems with staff, or delays arising out of efforts to resolve a matter through negotiations are not sufficient to justify an extension of time." Id. at 79 (citing Vitti, 359 N.J. Super. at 51). And, "[w]here the 'delay rests squarely on plaintiff's counsel's failure to retain an expert and pursue discovery in a timely manner,' and the Vitti factors

12

are not present, there are no exceptional circumstances to warrant an extension." Ibid. (quoting Huszar v. Greate Bay Hotel & Casino, Inc., 375 N.J. Super. 463, 473-74 (App. Div. 2005)); cf. Tucci v. Tropicana Casino & Resort Inc., 364 N.J. Super. 48, 53-54 (App. Div. 2003) (holding plaintiff's late service of its expert report did not warrant dismissal of the negligence action based on plaintiff's counsel's reasonable reliance on the cooperation of his adversaries who did not object to the submission thirty-nine days after the deadline and his personal reason of his mother's terminal illness and death).

Applying these principles to the matter before us, we agree with the trial court that plaintiff has failed to establish exceptional circumstances warranting re-opening discovery. The trial court found plaintiff's counsel did "the bare minimum" and only attempted to produce expert reports five months after their due date. We have no basis upon which to second-guess the trial court's finding that discovery was not completed within time because plaintiff's counsel was not diligent. Unlike Tucci, where expert reports were served 39 days late, here, plaintiff's export reports were served 137 days late. 364 N.J. Super. at 51. We add plaintiff missed both the expert report deadline and the DED.

Furthermore, discussions about mediation and additional depositions did not absolve counsel's obligation to produce their reports within time. See

Rivers, 378 N.J. Super. at 79 ("[D]elays arising out of efforts to resolve a matter through negotiations are not sufficient to justify an extension of time.").

The trial court also cited questions concerning the incident report as an example of counsel's lack of diligence.  The trial court noted, "to this day, [plaintiff's counsel] doesn't have the underlying incident report."  The court stressed, "this is an essential piece of discovery that plaintiff hasn't had in the two and a half years [of this litigation] . . . they have to do something.  They have to make a motion . . . to compel its production and that motion still has not been filed, to this day."

In addressing plaintiff's mis-calendaring explanation, the trial court recognized "mistakes happen."  However, the court also noted plaintiff received trial notices and DED reminders.  For example, on July 9, plaintiff and defendants were reminded of the September 18 DED.

Furthermore, the circumstances presented were clearly within the control of the attorney.  See Rivers, 378 N.J. Super. at 79; Vitti, 359 N.J. Super. at 50-51.  Plaintiff argues there were "multiple circumstances" beyond counsel's control including the COVID-19 pandemic, a clerical error, and defendants "being less than forthright in discovery."  However, as noted by the trial court,

plaintiff's counsel could have sought another extension, but did so only after defendant filed a motion for summary judgment a month after discovery ended.

The trial court also rejected plaintiff's contention defendants would suffer no prejudice if discovery was re-opened. Plaintiff sought additional discovery, including depositions and document production, which would take additional time. The trial court also commented that because defendants are a nursing home, they "have to account to their insurers, they have to account to the State."

In the final analysis, the test under Rule 4:24-1(c) is whether plaintiff has established exceptional circumstances—not just good cause—to excuse the failure to complete her discovery obligations before the DED and before the trial date was set. We conclude the trial court did not abuse its discretion or misapply the law in denying plaintiff's motion to re-open discovery. See New Cmty. Corp., 207 N.J. at 371.

## III.

We turn next to plaintiff's contention the trial court erred in granting summary judgment. Plaintiff claims "the trial court misapplied the Rules of Court and incorrectly subjected plaintiff to the ultimate sanction of dismissal with prejudice."

A-1527-22

In reviewing summary judgment orders, appellate courts use a de novo standard of review and apply the same standard employed by the trial court. Crisitello v. St. Theresa Sch., 255 N.J. 200, 218 (2023) (citing Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). Accordingly, "we determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting Rule 4:46-2(c)).

"To establish a prima facie case of negligence in a medical malpractice action, a plaintiff usually must present expert testimony to establish the relevant standard of care, the [medical provider's] breach of that standard, and a causal connection between the breach and the plaintiff's injuries." Rosenberg v. Tavorath, 352 N.J. Super. 385, 399 (App. Div. 2002) (citing Est. of Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 469 (1999)); see Ptaszynski v. Atl. Health Sys., Inc., 440 N.J. Super. 24 (App. Div. 2015). "Absent competent expert proof of these three elements, the case is not sufficient for determination by the jury." Rosenberg, 352 N.J. Super. at 399.

To establish a prima facie case of nursing home negligence, a plaintiff must prove not only that the defendant deviated from recognized standards of medical/nursing care, but also that this deviation was a proximate cause of the complained-of injuries. With rare exception, evidence of deviation from accepted medical standards must be proved by competent, qualified physicians. See Schueler v. Strelinger, 43 N.J. 330, 344-345 (1964); see Parker v. Goldstein, 78 N.J. Super. 472, 478 (App. Div. 1963).

We are mindful that caution should be exercised before depriving a litigant of its cause of action due to attorney errors that can be corrected short of dismissing the action with prejudice. See Castello v. Wohler, 446 N.J. Super. 1, 26 (App. Div. 2016) (recognizing the strong preference that courts use lesser sanctions than the ultimate sanction of dismissal with prejudice). Here, plaintiff provided expert reports after the discovery deadline. Because plaintiff did not submit her expert reports before the end of discovery, we do not believe the trial court erred in concluding those reports were not part of the record for purposes of deciding defendant's summary judgment motion. Accordingly, we have no basis on de novo review to overturn the grant of summary judgment to defendants.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1527-22