**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5232-16T1

CURT BRICKELL,

    Plaintiff-Appellant,

v.

CABLEVISION, a/k/a
CSC TKR, LLC, MARK LIME,
and ROBERT KNAPP,

    Defendants-Respondents.

_____

Argued February 6, 2019 – Decided June 22, 2020

Before Judges Fuentes, Accurso, and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-0971-15.

Eric V. Kleiner argued the cause for appellant (Eric V. Kleiner and Rudie O. Weatherman, on the briefs).

Barbara E. Hoey (Kelley Drye & Warren LLP) of the New York bar, admitted pro hac vice, argued the cause for respondents (Kelley Drye & Warren, LLP, attorneys; Barbara E. Hoey and John P.J. Mattiace, on the brief).

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Plaintiff Curt Brickell worked at Cablevision a/k/a CSC TKR, LLC (Cablevision) from December 1996 until he was terminated for cause on February 26, 2014. On January 23, 2015,[1] nearly a year after his termination, plaintiff filed a six-count civil action against his former employer predicated on violations of the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42. Plaintiff also named as defendants Mark Lime and Robert Knapp, two of his former supervisors. In Counts I through III of the complaint plaintiff alleged he was subject to a hostile work environment, discrimination, and retaliation. According to plaintiff, his supervisors and coworkers incessantly harassed and taunted him based on his alleged cognitive deficits and/or developmental disabilities. Count IV alleged violations of his right to due process and equal protection under our State and federal constitutions; Count V alleged intentional infliction of emotional distress; and Count VI alleged negligent management or retention by Cablevision.

Plaintiff appeals from: (1) the court's decision to strike his expert's report as a sanction for his attorney's failure to adhere to a court-ordered discovery

---

[1] Plaintiff filed an amended complaint on March 10, 2015.

A-5232-16T1

schedule; and (2) the court's subsequent decision to grant defendants' motion for summary judgment which resulted in the dismissal of his complaint with prejudice. After reviewing the record developed before the trial court, we affirm.

Plaintiff worked for Cablevision as a field service technician. In this role, he traveled to customers' homes in response to reports of technical problems with their cable service. Plaintiff's fellow service technicians made numerous complaints to management about plaintiff's technical proficiency and work ethic. They alleged that work assigned to plaintiff was not performed correctly or left incomplete requiring other technicians to return to the worksite to finish the job. From August 2000 until he was terminated on February 26, 2014, Cablevision formally disciplined plaintiff sixteen times for dereliction of duty, failure to complete work assignments, and other employment-related misconduct. Plaintiff's employment file contained a myriad of poor performance evaluations, customer complaints, documented oral warnings about substandard work, and written disciplinary warnings.

For example, a written performance review dated January 19, 2001 shows a supervisor personally met with plaintiff to discuss numerous complaints made by his fellow field technicians about his consistent failure to finish work

3

assignments. This form of misconduct is known as "kicking back" work and caused "a lot of dissention in the crew." A "performance improvement" memo sent to plaintiff by his supervisors dated January 22, 2001 warned plaintiff that "[n]o work that is kicked back by you should be rescheduled to another technician."

However, substandard job performance and dereliction of duty were not the only reasons that caused Cablevision to terminate plaintiff's employment. Cablevision claims that the complaint made by a customer on February 4, 2014 was the event that tipped the scales in favor of termination. On that date, a female customer called to complain that plaintiff arrived at her home on a service call and began to work on her property without identifying himself as a Cablevision service technician. The customer specifically stated that plaintiff's surreptitious presence made her uncomfortable.

The record of this incident also shows that plaintiff made a number of personal phone calls while inside the customer's home. He asked the customer to use her bathroom and remained inside the bathroom for an unusually long period of time. The customer claimed she heard plaintiff talking on his cellphone while inside her bathroom. Finally, plaintiff walked into the customer's bedroom and closed the door to respond to a personal phone call.

A-5232-16T1

Plaintiff's theory of liability against Cablevision is based on how he was treated by his supervisors and coworkers. He alleges he was harassed and ridiculed by supervisors Lime and Knapp "on a daily basis." He claims these two men disparaged him "in the presence of his fellow service technicians" and called him "retarded, stupid, slow, dumb" and other similar insults based on his alleged intellectual disability and/or cognitive deficits. Other than a former coworker from 2002, plaintiff did not identify anyone else he told about his alleged cognitive disabilities. The coworker claimed plaintiff told her he was dyslexic. However, plaintiff has never been diagnosed with dyslexia. Plaintiff also acknowledged at his deposition that his alleged learning disability did not hamper his ability to perform his work-related responsibilities. Moreover, plaintiff did not produce any medical evidence that he was diagnosed with a learning disability during the time he was employed by Cablevision.

Discovery began in March 2015. On August 22, 2016, the judge entered a case management order (CMO): (1) extending discovery until December 21, 2016; (2) requiring plaintiff to complete defendants' depositions by no later than October 28, 2016; and (3) requiring the parties to complete all fact-witnesses depositions by no later than December 21, 2016. The CMO also set deadlines for serving expert reports and the completion of the experts' depositions.

Plaintiff was required to serve his expert's report by no later than September 30, 2016. The attorneys retained the right to modify any part of the court-imposed deadlines by consent provided the modification did not change the CMO's discovery end date

On September 30, 2016, plaintiff's counsel served defendants with a preliminary psychological report authored by Dr. Myra J. Marshall, plaintiff's expert. In his transmittal letter, plaintiff's counsel noted that "this report will be supplemented in the very near future." On October 11, 2016, defendants moved to strike Dr. Marshall's September 30, 2016 preliminary report and to preclude plaintiff from submitting any additional expert reports. In an order dated December 12, 2016, the trial judge granted defendants' motion. The judge found Dr. Marshall's September 30, 2016 preliminary report was incomplete and did not justify an extension of the discovery end date. The judge concluded that acceptance of this incomplete report would violate the CMO's unambiguous deadlines. The judge also denied plaintiff's motion for reconsideration.

Defendants moved for summary judgment thereafter arguing plaintiff was unable to prove any of the allegations in his complaint against Cablevision and the two named supervisors as a matter of law. The motion came for oral argument before the trial judge on April 21, 2017. Before hearing from counsel,

the judge noted for the record that the case was scheduled for trial on May 2, 2017 and the parties had waived the ten-day requirement "with respect to the summary judgment rules."[2] After considering the arguments of counsel, the judge granted defendants' motion and dismissed the complaint with prejudice as a matter of law.

Plaintiff's argument challenging the trial judge's decision to preclude him from presenting expert testimony is without merit. Rule 4:17-4(e) authorizes a trial court to set a date certain for the production of expert reports. The record shows plaintiff's counsel was well aware of the discovery schedule established by the trial court in its CMO dated August 22, 2016. The trial judge has the discretion to sanction a party who violates such an order. Maurio v. Mereck Constr. Co., 162 N.J. Super. 566, 569 (App. Div. 1978). These sanctions may include the preclusion of an expert's report or testimony. Ibid. In his decision to strike Dr. Marshall's incomplete expert report, the judge found plaintiff did

---

[2] Rule 4:46-1 provides, in relevant part, that:

> All motions for summary judgment shall be returnable no later than [thirty] days before the scheduled trial date, unless the court otherwise orders for good cause shown, and if the decision is not communicated to the parties at least [ten] days prior to the scheduled trial date, an application for adjournment shall be liberally granted.

A-5232-16T1

not provide any reasonably justifiable basis to extend the long-established deadlines in the CMO. To accept an incomplete expert's report in lieu of the final document required under the CMO would undermine the court's authority to manage civil disputes and creates an incentive for unscrupulous parties to use these half-measures as a subterfuge to extend the discovery deadline.

An appellate court will generally defer to a trial court's disposition of discovery matters, unless the record shows a clear abuse of discretion. Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso–Sanchez v. Immigration & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). We discern no legal or factual basis to conclude the trial judge abused his discretion when he enforced the discovery deadlines established in the August 22, 2016 CMO.

Independent of these discovery violations, the trial judge granted defendants' motion for summary judgment and dismissed plaintiff's cause of action as a matter of law. Plaintiff's arguments attacking this decision also lack merit.

A trial court must grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)). To determine whether there is a genuine issue of material fact in dispute, the motion judge must consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). This court applies the same standards and reviews a trial court's order granting a motion for summary judgment de novo. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016).

Here, the trial judge concluded that plaintiff did not make out a prima facie case of a hostile work environment based on his alleged intellectual disabilities. To survive defendants' summary judgment motion, plaintiff must show: (1) that he was harassed by his coworkers and supervisors; (2) this harassment would not have occurred but for his alleged intellectual disability;

9

(3) the harassment was so severe and/or pervasive that; (4) a reasonable person with the same intellectual disability would believe that; (5) the conditions of employment were altered and the work environment was hostile and/or abusive. Aguas v. State, 220 N.J. 494, 509 (2015) (alleging hostile work environment through gender-based harassment).

The Court adopted a similar standard in Taylor v. Metzger, 152 N.J. 490 (1998), a case involving allegations of racial slurs in the workplace. The Court in Taylor identified the elements a plaintiff must satisfy to establish a prima facie case of hostile work environment based on racial animus: (1) the complained of conduct would not have occurred but for plaintiff's status as a member of a protected class; (2) the conduct was severe and/or pervasive; (3) to make a reasonable individual who is a member of the protected class conclude that; (4) the conditions of employment have been altered and the work environment is hostile or abusive. Id. at 498.

Here, the judge found plaintiff did not make out a prima facie case of a hostile work environment based on plaintiff's actual intellectual disabilities. Stated differently, plaintiff did not produce sufficient evidence to meet the standard established by the Court in Aguas and Taylor as a matter of law. The judge found plaintiff did not prove he is a member of a protected class and did

not produce evidence that being called "brick-head" by his coworkers and his two supervisors as a nickname is sufficient to establish a reasonable individual would conclude the conduct was severe and pervasive, as opposed to sophomoric behavior and/or benign horseplay in the workplace.

Finally, the trial judge concluded plaintiff is barred from bringing this cause of action by the two-year statute of limitations applicable to LAD claims. N.J.S.A. 2A:14-2. All of the evidence plaintiff produced to support his claims of bullying and other hostile acts in the workplace based on his alleged intellectual disabilities and/or cognitive limitations occurred in 2000 and 2001. Plaintiff filed this LAD complaint against Cablevision and his two supervisors on January 23, 2015.

It is also undisputed that plaintiff did not base his LAD cause of action on being "perceived" as an intellectually disabled or cognitively impaired individual. The following exchange between plaintiff's counsel and the trial judge in the course of oral argument addressing defendants' summary judgment motion dispels any lingering doubts about this issue:

> THE COURT: Is this a perceived disability case?
>
> PLAINTIFF'S COUNSEL: And the answer to your question, Judge, is it is not a perceived disability case. In the arguments made by plaintiff at the summary judgment stage what we're saying to the [c]ourt is

> there's ample evidence in this particular case to indicate at the summary judgment stage, similar to where we are with many of these cases that go to trial and then we have these issues that come up on appeal, that there is ample evidence that the disability is readily apparent.

The judge ruled that plaintiff cannot assert a cause of action based on being intellectually disabled without expert medical or psychological evidence to support it. We agree. Plaintiff's contrary position in this appeal is unavailing. A party cannot raise a new cause of action in opposition to summary judgment on appeal. Carlini v. Curtiss-Wright Corp., 71 N.J. Super. 101, 109 (App. Div. 1961). We thus end our analysis by incorporating by reference the trial judge's statement of reasons attached to his June 29, 2017 order granting defendants' motion for summary judgment. Plaintiff's remaining arguments lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5232-16T1