**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3131-22

CHRISTINE SULLIVAN,

    Plaintiff-Appellant,

v.

DR. ASIT SHAH, M.D., PH.D.,
ENGLEWOOD HEALTH,
MAXWELL JANOSKY, M.D., and
JOSEPH S. FLEISCHER, M.D.,

    Defendants-Respondents,

and

HACKENSACK MERIDIAN
HEALTH PARTNERS, LLC,
MARK GABELMAN, M.D., and
APURVA MOTIVALA, M.D.,

    Defendants.

_____

Argued October 23, 2024 – Decided January 16, 2025

Before Judges Currier, Marczyk, and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1944-21.

F.R. "Chip" Dunne, III argued the cause for appellant (Dunne, Dunne & Cohen, LLC, attorneys; F.R. "Chip" Dunne, III, on the briefs).

John R. Scott argued the cause for respondents Joseph S. Fleischer, M.D. and Englewood Health (Clare & Scott, LLC, attorneys; John R. Scott, of counsel and on the briefs).

Michael R. Ricciardulli argued the cause for respondent Maxwell Janosky, M.D. (Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys; Michael R. Ricciardulli, of counsel; Matthew E. Blackman, on the brief).

Walter F. Kawalec, III argued the cause for respondent Asit Shah, M.D., Ph.D. (Marshall Dennehey, attorneys; Walter F. Kawalec, III and Robert T. Evers, on the brief).

PER CURIAM

In this medical malpractice case, plaintiff appeals from the orders finding the affidavit of merit (AOM) served on defendant Joseph S. Fleischer, M.D. was not sufficient under N.J.S.A. 2A:53A-41(a)(1) and denying her motion to extend discovery as to all defendants. We affirm.

I.

Plaintiff underwent knee replacement surgery at defendant Englewood Health with board-certified orthopedic surgeon defendant Asit Shah, M.D., Ph.D. Plaintiff was on Xarelto for prior bilateral pulmonary embolisms. She

2

developed pulmonary embolus causing additional complications after the surgery.

With her complaint, plaintiff served an AOM against Dr. Shah from Frank Pupparo, M.D., a board-certified orthopedic surgeon. Dr. Pupparo concluded: "Although I cannot expertly critique non-[o]rthopaedic services, I believe with a reasonable degree of medical certainty that [o]rthopaedist, Dr. Shah, by prematurely discontinuing Xarelto and thereby increasing the risk of thrombotic events, deviated from the standard of care resulting in injury to [plaintiff]."

Plaintiff subsequently served an AOM from Marc Braunstein, M.D., Ph.D., a board-certified physician in internal medicine, hematology, and oncology. Dr. Braunstein stated: "I believe[,] with a reasonable degree of medical certainty, that the mismanagement of [plaintiff's] pre-operative as well as post-operative anticoagulation, both prematurely discontinuing Xarelto pre-operatively and delivering a supratherapeutic dose of heparin post-operatively, deviated from standard medical practice ultimately leading to the series of subsequent complications suffered by [plaintiff]." The AOM mentioned Dr. Shah as the surgeon and defendant Maxwell Janosky, M.D. as the hematologist ordering medications during the hospitalization at Englewood.

Defendant Apurva Motivala, M.D. filed an answer, advising of her board-certification in the subspecialty of cardiovascular disease and certifying her treatment of plaintiff involved cardiovascular disease.

Dr. Janosky also filed an answer, certifying he was board-certified in internal medicine, hematology and medical oncology, and that he specialized in hematology during the relevant period. According to Dr. Janosky, he completed a hematology consultation of plaintiff per Dr. Motivala's request, and placed orders for plaintiff's care while she was in the hospital.

Defendant Joseph S. Fleischer, M.D. was board-certified in internal medicine and worked as a hospitalist at Englewood Health during the time he provided care to plaintiff. Dr. Fleischer sent plaintiff's counsel a letter, advising of his objection to the AOM, because it did not name him or state how he had deviated from the standard of care of a hospitalist, and the AOM did not meet the kind-for-kind requirement set forth in N.J.S.A. 2A:53A-41(a)(1). Thereafter, the court conducted a Ferreira[1] conference.

Dr. Fleischer subsequently filed a motion to dismiss the complaint with prejudice for plaintiff's failure to serve a sufficient AOM. Dr. Motivala also

---

[1] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003).

moved to dismiss plaintiff's complaint with prejudice for failure to state a claim. Plaintiff did not oppose Dr. Motivala's motion.

In an oral decision and memorializing August 26, 2022 order, the trial court granted the motions. In addressing Dr. Fleischer's arguments, the court found Dr. Fleischer was certified in a subspecialty as a hospitalist and therefore the AOM from Dr. Braunstein—a hematologist oncologist—was deficient.

Plaintiff's subsequent motion for reconsideration of the order dismissing the complaint against Dr. Fleischer was denied. In its written opinion accompanying the October 7, 2022 order, the court found the Braunstein AOM did not comply with the statutory requirements under N.J.S.A. 2A:53A-41 because Dr. Braunstein did not have the same credentials or practice in the same specialty as Dr. Fleischer.

After plaintiff did not serve any expert reports prior to the expiration of the discovery end date, Drs. Shah and Janosky moved for summary judgment and to dismiss plaintiff's complaint in December 2022. Englewood Health also moved to dismiss the complaint. Discovery had ended in November 2022. Trial was scheduled for May 1, 2023.

In response, plaintiff cross-moved to extend discovery and deny the motions to dismiss. In her certification, plaintiff stated she had experienced

numerous medical issues that affected her life, and she requested an extension of discovery. Counsel certified that all discovery had been provided "except for outstanding final expert reports which [were] forthcoming."

The trial court granted the three motions and dismissed the complaint against Englewood Health and Drs. Shah and Janosky. The court denied the cross-motion to extend discovery because plaintiff's issues did not arise to exceptional circumstances and did not "forgive counsel for failing to . . . extend discovery." The court stated plaintiff's belated request to extend discovery in response to the dismissal motions "because . . . plaintiff suffered some problems" was "devoid of any merit." The court issued written orders memorializing its oral opinion on January 20, 2023.

Plaintiff moved for reconsideration, including a certification from Dr. Pupparo stating he needed medical records related to plaintiff's ongoing health issues to prepare his expert report. Plaintiff certified that her experts needed additional time to review her records due to her medical issues and the complexity of her case.

The court denied the motion in a written opinion and accompanying order on March 17, 2023. The court found plaintiff's ongoing medical issues did not satisfy the exceptional circumstances standard under Rule 4:24-1(c) to extend

discovery because her health problems did not impact her experts' ability to provide their reports within the designated time frame. The court further noted that plaintiff's only proffered reason for failing to request an extension until after the deadline passed was her medical issues, but "[o]bviously [plaintiff's health issues] had no [a]ffect on counsel's ability to file a timely motion." Furthermore, the court stated it had considered plaintiff's medical issues when determining the initial motion to extend discovery. The court also rejected plaintiff's argument, improperly made for the first time in her reply brief on the reconsideration motion, that the AOMs sufficed as expert reports.

Thereafter, plaintiff filed a motion to vacate the order denying the reconsideration motion and to reinstate her complaint against Englewood Health and Drs. Shah and Janosky. In the supporting brief, counsel stated "staffing shortages" led to "a simple oversight in counsel's calendar" as a rationale for not requesting an extension of the discovery end date sooner. The court denied the motions on May 12, 2023, finding they were impermissible second motions for reconsideration not authorized under the court rules.

II.

On appeal, plaintiff contends the trial court erred in: (1) dismissing the complaint against Drs. Fleischer and Motivala[2] and denying the motion for reconsideration because she served compliant AOMs against each doctor; (2) denying her motions to extend discovery as to all defendants and to reconsider the order; and (3) denying her motion to vacate the order denying reconsideration.

A.

We begin with a consideration of the AOM served against Dr. Fleischer. Our review of a trial court's determination regarding the sufficiency of an AOM is de novo. Meehan v. Antonellis, 226 N.J. 216, 230 (2016).

Plaintiff contends the Braunstein AOM is sufficient to sustain her claims against Dr. Fleischer because it meets the kind-in-kind, same-specialty requirements under N.J.S.A. 2A:53A-41(a)(1). We disagree.

N.J.S.A. 2A:53A-41 provides:

> a. If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist recognized by the American Board of Medical Specialties [(ABMS)] . . . and the care or treatment at issue involves that specialty or subspecialty recognized

---

[2] After filing her merits brief, plaintiff voluntarily dismissed her claims against Dr. Motivala.

by the [ABMS] . . . , the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, recognized by the [ABMS] . . . , as the party against whom or on whose behalf the testimony is offered, and if the person against whom or on whose behalf the testimony is being offered is board certified and the care or treatment at issue involves that board specialty or subspecialty recognized by the [ABMS] . . . , the expert witness shall be:

(1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; or

(2) a specialist or subspecialist recognized by the [ABMS] . . . who is board certified in the same specialty or subspecialty, recognized by the [ABMS] . . . , and during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of [their] professional time to either:

(a) the active clinical practice of the same health care profession in which the defendant is licensed, and, if the defendant is a specialist or subspecialist recognized by the [ABMS] . . . , the active clinical practice of that specialty or subspecialty recognized by the [ABMS] . . . ; or

(b) the instruction of students in an accredited medical school, other accredited health professional school or accredited residency or clinical research program in the same health care profession in which the defendant is licensed, and, if that party is a specialist or subspecialist recognized by the [ABMS] . . . , an accredited medical school, health professional school or accredited residency or clinical research program in

9

A-3131-22

the same specialty or subspecialty recognized by the [ABMS] . . . ; or

(c) both.

Dr. Fleischer is board certified in internal medicine. He worked as a hospitalist at Englewood Health. Dr. Braunstein is board certified in internal medicine with subspecialties in hematology and oncology. He is the director of the hematology/oncology fellowship program at NYU Langone Hospital, co-director of the Hematology System at NYU Long Island School of Medicine and works at the Perlmutter Cancer Center at NYU Langone Hematology Oncology Associates. Additionally, many of his awards and much of his involvement in professional and external organizations are in the fields of hematology and oncology.

Dr. Braunstein does not meet the requirements of N.J.S.A. 2A:53A-41(a)(2) because his practice was within his subspecialties of hematology and oncology, not in the more generalized field of internal medicine practiced by Dr. Fleischer. Dr. Fleischer treated plaintiff as an internist.

As this court stated in Pfannenstein ex rel. Estate of Pfannenstein v. Surrey, 475 N.J. Super. 83, 102 (App. Div.), certif. denied, 254 N.J. 512 (2023), the same-specialty requirement was "not satisfied where the affiant's practice falls within a subspecialty of a defendant doctor's specialty, when the

10 <span></span>

subspecialist no longer specializes, nor is board certified, in that specialty." Dr. Braunstein was not equivalently credentialed to Dr. Fleischer because he did not devote a majority of his time to practicing or teaching internal medicine.

The AOM is also deficient as to Dr. Fleischer for an additional reason: it does not refer to the doctor or to any specific theory of negligence against him. It only states the mismanagement of plaintiff's anticoagulant medications "deviated from standard medical practice ultimately leading to the series of subsequent complications," without referring to any specific physician.

The failure to name Dr. Fleischer alone would not be a fatal flaw. But without any expert opinion at all, whether it be in the AOM or a subsequent expert report, the claim against Dr. Fleischer cannot stand.

In Fink v. Thompson, 167 N.J. 551, 559 (2001), the Court considered whether an AOM that listed multiple doctors, but not the defendant, was compliant. The Court found that "N.J.S.A. 2A:53A-27 requires that a plaintiff provide an [AOM] to each defendant detailing a reasonable probability that at least one claim concerning each defendant has merit." Id. at 560. Therefore, it concluded that since the AOM did not specifically reference the defendant doctor, it was not sufficient. Ibid.

11 <span>A-3131-22</span>

However, the Fink Court subsequently determined the AOM was sufficient under a theory of substantial compliance. Id. at 561-65. The Court noted the defendant was served with a complaint containing "generalized assertions of professional negligence . . . that were essentially identical to the allegations" against other doctors. Id. at 561-62. The plaintiff served an AOM with a "brief conclusory paragraph" but also served an "extensive pre-suit expert report," discussing the defendant doctor's actions in caring for the plaintiff. Id. at 562. Therefore, the Court found the defendant doctor had "a clear statement of the theory of negligence that contributed to [the plaintiff's] death" and the defendant doctor's involvement in the alleged negligence. Ibid.

While noting additional discovery was needed to clarify each doctor's role in the plaintiff's death, the Court found that the AOM and report "clearly focused on [the defendant doctor's] conduct." Id. at 564. The Court determined the defendant doctor was not prejudiced by the noncompliant AOM, and that he "was prepared for suit after receiving the complaint, the expert report, and the [AOM]." Id. at 564-65.

The facts presented here do not support deeming the AOM sufficient under the substantial compliance theory. Whether the doctrine can be applied requires consideration of:

(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of [plaintiff's] claim, and (5) a reasonable explanation why there was not strict compliance with the statute.

[Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 239 (1998) (quoting Bernstein v. Bd. of Trs. of Tchrs.' Pension & Annuity Fund, 151 N.J. Super. 71, 76-77 (App. Div. 1977)).]

The initial and amended complaints identify Dr. Fleischer as a hospitalist "associated with Englewood Health" who "failed to properly diagnos[e], treat and/or medicate . . . [p]laintiff as set forth below." This same language is used in the complaint regarding all defendant physicians.

The complaint discusses Dr. Shah's mismanagement of plaintiff's anticoagulant medication prior to and after the March 29, 2019 surgery. According to the complaint, plaintiff "developed acute and severe shortness of breath" on April 1, 2019. "Hematology/Oncology service was called upon to manage anticoagulation" after the diagnosis of a pulmonary embolism. "Xarelto was discontinued and [p]laintiff started on heparin drip and . . . later switched over to Lovenox by . . . Hematology/Oncology service."

The complaint further alleges: "On [April 8, 2019], . . . Hospitalist was called to see [p]laintiff for complaints of worsening right thigh pain and

13

numbness, which was first noted by [p]laintiff on [April 1, 2019]. MRIs of both her spine and pelvis were ordered." As discussed, the Braunstein AOM does not mention Dr. Fleischer or a hospitalist. Therefore, neither the complaint nor the AOM provides any reference to Dr. Fleischer's involvement with the usage of anticoagulant medications which is the basis for the malpractice action. The scant reference to "hospitalist" reflects that individual saw plaintiff a week after she was diagnosed with the pulmonary embolism.

Plaintiff never served an expert report detailing the standard of care required of Dr. Fleischer as a hospitalist, whether he deviated from that standard of care, and whether there was a causal relationship between the deviation and any damages incurred by plaintiff. Unlike Fink, plaintiff did not provide any expert opinion regarding Dr. Fleischer's care and his involvement in any alleged negligence. Quite simply, Dr. Fleischer has not been apprised of the theory of liability against him.

Plaintiff's AOM was insufficient to support a case against Dr. Fleischer because it did not meet the statutory requirements regarding Dr. Braunstein's credentials. Moreover, the only materials offered—the complaint and the AOM—were not sufficient to apprise Dr. Fleischer of plaintiff's theory of the

A-3131-22

deficiency of the hospitalist's care. The trial court properly dismissed the complaint against Dr. Fleischer.

For the same reasons, we are satisfied the court did not abuse its discretion in denying reconsideration of its order. A trial court abuses its discretion when its decision is "without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

                                B.

We turn to plaintiff's motions to extend discovery. Plaintiff contends she presented sufficient evidence of exceptional circumstances for the court to re-open discovery and extend the discovery end date. The trial court disagreed and dismissed the complaint as to Drs. Shah, Fleischer, and Janosky.

We "generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion[,] or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005) (citing Payton v. New Jersey Tpk. Auth., 148 N.J. 524, 559 (1997)).

Plaintiff did not serve any expert reports against any defendant prior to the discovery end date. Nor did plaintiff move the court at any time to extend the discovery end date prior to its expiration. Plaintiff only moved for an extension after defendants moved for summary judgment and dismissal of the complaint for the lack of any expert opinion.

Rule 4:24-1(c) provides that discovery can be extended after a trial date has been established only upon a showing of "exceptional circumstances." The Rule has also been interpreted "as requiring a showing of exceptional circumstances whenever an application to extend the time for discovery is presented after the time for discovery has expired even if the matter has not yet been scheduled for . . . trial." Vitti v. Brown, 359 N.J. Super. 40, 45 (Law Div. 2003).

The moving party must demonstrate:

> (1) why discovery has not been completed within time and counsel's diligence in pursuing discovery during that time; (2) the additional discovery or disclosure sought is essential; (3) an explanation for counsel's failure to request an extension of the time for discovery within the original time period; and (4) the circumstances presented were clearly beyond the control of the attorney and litigant seeking the extension of time.
>
> [Rivers, 378 N.J. Super. at 79.]

16

Plaintiff has not established any of these elements. In the initial cross-motion, plaintiff provided her own certification outlining her continuing medical issues. Counsel certified all discovery was complete except for the service of expert reports.

After the court denied the application, finding plaintiff had not demonstrated exceptional circumstances, plaintiff moved for reconsideration. She included an affidavit from Dr. Pupparo who stated he needed more time— at least ninety days—to complete his expert report because the case was complex, and he had to review records regarding plaintiff's ongoing health issues.[3]

Neither the initial cross-motion nor the motion for reconsideration explained whether counsel had diligently sought the information Dr. Pupparo needed or why counsel did not request an extension of the discovery end date prior to its expiration. See Bender v. Adelson, 187 N.J. 411, 429 (2006) ("A precise explanation that details the cause of delay and what actions were taken

---

[3] The submission of this certification in support of a motion for reconsideration is inappropriate as the motion is "not . . . a vehicle to introduce new evidence to cure an inadequacy in the motion record." Cap. Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). Nevertheless, for completeness, the trial court and this court have considered it.

during the elapsed time is a necessary part of proving due diligence as required by . . . exceptional circumstances . . . ."). Furthermore, there is no evidence of any circumstances that prevented counsel from making the appropriate motion.

In addition, Dr. Pupparo was only qualified to proffer opinions against Dr. Shah as an orthopedic surgeon, and not as to Drs. Janosky and Fleischer. There is no explanation regarding the absence of any report from Dr. Braunstein.

We discern no abuse of discretion in the court's orders denying plaintiff's cross-motions to extend discovery and reconsideration of the orders. Without expert opinion, plaintiff could not support her claims of medical negligence.

To the extent we have not commented on them specifically, all other points plaintiff raises on appeal lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION