**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3322-19

MIKYUNG LEE and SEOUNG
JU BANG,

     Plaintiffs-Respondents,

v.

JUNG H. LEE, a/k/a JUNG HO
LEE, and PLAN J, INC.,

     Defendants-Appellants.

_____

Submitted February 9, 2021 – Decided February 26, 2021

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-6056-18.

Peter Y. Lee, attorney for appellants.

Daniel D. Kim, attorney for respondents.

PER CURIAM

     In this appeal, defendants Jung H. Lee and Plan J. Inc., seek reversal of a judgment, entered against them after a two-day bench trial, that awarded

plaintiffs Mikyung Lee and Seoung Ju Bang $116,500 in damages. We find no error and affirm.

The judge made credibility findings and determined that the parties agreed, in late December 2017, to a sale of defendant Plan J. Inc.'s Fort Lee restaurant, including its liquor license, to plaintiffs for $892,000, a substantial part of which would be paid over a period of years. There were twists and turns to the process and the contract as envisioned was never formed.

In his findings, the judge credited the testimony of plaintiff Mikyung Lee (plaintiff). She testified that her understanding of the material parts of the conveyance was that she would immediately provide a $50,000 deposit to defendant Jung H. Lee (defendant), who, on receipt, would produce a written contract memorializing this transaction, including the terms necessary to effect a conveyance of Plan J's liquor license. The oral understanding included that, once an acceptable draft contract was provided and executed – no later than February 1, 2018 – plaintiff would make a second $50,000 deposit.

Notwithstanding the parties' understanding about how they would proceed, defendant stated in mid-January 2018 that he urgently required the second $50,000 deposit – even though he had yet to provide a written contract – apparently because he was in the process of opening a restaurant in New York City. Believing defendant was acting in good faith, plaintiff paid the second

$50,000. With that, defendant gave plaintiff access to the Fort Lee restaurant so she could begin installing equipment and making other changes. He also invited plaintiff to open the restaurant in February, and plaintiff did so.

Defendant emailed a draft contract on February 4, 2018. In plaintiff's view, the contract omitted several essential terms: it did not acknowledge $100,000 had already been paid; omitted the payment schedule agreed on; and lacked terms necessary to cause a transfer of the liquor license. Plaintiff objected, and defendant responded he would provide a contract that contained those terms. Defendant also disclosed for the first time that Plan J had a minority shareholder but advised he would imminently buy out that shareholder.

More than two months went by without defendant providing a written contract memorializing all material agreed-upon terms; meanwhile, plaintiff continued to operate the restaurant. In April 2018, defendant told plaintiff that his dispute with the minority shareholder – that was pending in the Chancery Division – had been resolved and he was ready to draft and execute a contract.

Later that month, defendant provided another draft but plaintiff remained unsatisfied. The parties and their attorneys met to hash things out, with plaintiff taking the position that the contract necessarily had to include provisions that would make plaintiff a Plan J shareholder so as to effectuate the inclusion of the liquor license in the overall transaction. In the midst of this meeting, defendant

abruptly advised he had to leave but would sign the document understanding it would be completed in his absence. The next day, defendant discharged his attorney and refused to complete the transaction. With that, plaintiff demanded that defendant provide an acceptable contract by May 9, 2018, or she would walk away from the deal. When nothing thereafter occurred, plaintiff returned the keys to the restaurant and commenced this suit.

At the conclusion of a two-day bench trial, the judge credited plaintiff and her version of what transpired and determined that defendant's failure to complete the transaction was unjustified, entitling plaintiff to be made whole. Those credibility determinations and factual findings are deserving of our deference because they are fully supported by evidence in the record. See Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974). Deference is "especially appropriate when" – as here – "the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 412 (1998).

To make plaintiffs whole – because to leave the parties where they were found when suit started would unjustly enrich defendant – the judge awarded plaintiffs $100,000 (the amount of the deposit) and an additional $16,500, a figured based on the three monthly payments plaintiff made while operating the restaurant and awaiting an agreeable formal contract, which never arrived.

A-3322-19

In appealing, defendants argue:

> I. THE TRIAL COURT ERRED BECAUSE IT ENFORCED OR CONDONED AN ILLEGAL ARRANGEMENT INVOLVING PLAINTIFFS' BORROWING OF DEFENDANTS' NEW JERSEY LIQUOR LICENSE AND ALLOWED THEIR RETENTION OF PROCEEDS DERIVED FROM CRIMINAL ACTIVITY, INCLUDING THE UNLAWFUL SALES OF ALCOHOLIC BEVERAGES.

> II. THE TRIAL COURT ERRED BECAUSE IT HAD REOPENED DISCOVERY WHERE PLAINTIFFS HAD NEITHER PURSUED TIMELY DISCOVERY NOR PRESENTED ANY EXCEPTIONAL CIRCUM-STANCES.

> III. THE TRIAL COURT ERRED BECAUSE IT FOUND PLAINTIFFS HAVE STANDING TO PURSUE CLAIMS AND DAMAGES BASED ON MONIES ALLEGEDLY PAID BY A NONPARTY WHO IS A COMPLETE STRANGER TO THIS LITIGATION.

We find insufficient merit in these arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only a few comments about each of defendants' three arguments.

In their first, defendants contend plaintiffs should have been barred from recovering because they used Plan J's liquor license to serve alcohol during the few months plaintiff operated the restaurant. Even assuming this arrangement violated state or local alcohol regulations – an issue we need not decide – defendant cannot paint himself free from fault, since he invited plaintiff to

operate the restaurant in that interim period. Moreover, defendant has not provided a principled reason why this alleged violation should lead to his recovery of a windfall by retaining the $100,000 deposit when, as the judge found, the failure to complete the transaction was defendant's fault. In pursuing the appropriate goal of making plaintiff whole due to defendant's unilateral failure to complete the transaction, the judge fairly included in the judgment an award of damages that consisted of the deposit amount and the three monthly $5,500 payments for plaintiff's otherwise pointless three-month operation of a restaurant she would never own.

In their second point, defendants claim another judge's grant of an extension of discovery a few months prior to trial was erroneous. Defendants have provided nothing that would suggest the extension order constituted an abuse of discretion, the standard we must apply in reviewing that order. See, e.g., Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005). Nor have defendants demonstrated how they were prejudiced by that determination.

We lastly reject defendant's third point, in which he argues plaintiffs lacked standing to seek damages for a portion of the $100,000 deposit because that fund consisted of a $35,000 check from a New York corporation, which is not a party to this suit. There is nothing in the record to suggest plaintiffs were not entitled to the use of the funds represented by this check. Moreover,

6

defendants never complained about the source of the funds when they received and negotiated the checks that comprised the $100,000 deposit.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3322-19