**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0084-24

JAMES WHELTON,

     Plaintiff-Appellant,

v.

REMA TIP TOP/NORTH AMERICA,
INC., REMA TIP TOP OF AMERICA,
INC., REMA TIP TOP AG, OLAFUR
GUNNARSSON, MICHAEL
ÜBELACKER, and STAHLGRUBER
OTTO GRUBER, AG,

     Defendants-Respondents.

_____

         Argued February 25, 2025 – Decided March 14, 2025

         Before Judges Gilson, Firko, and Augostini.

         On appeal from an interlocutory order of the Superior
         Court of New Jersey, Law Division, Bergen County,
         Docket No. L-2829-22.

         Michael F. O'Connor argued the cause for appellant
         (McMoran O'Connor Bramley & Burns, PC, attorneys;
         Michael F. O'Connor, on the briefs).

Lindsay A. Dischley argued the cause for respondents Rema Tip Top AG, Stahlgruber Otto Gruber, AG, and Michael Übelacker (Chiesa Shahinian & Giantomasi, PC, attorneys; Lindsay A. Dischley and Brigitte M. Gladis, on the brief).

Samuel J. Bazian argued the cause for respondents Rema Tip Top/North America, Inc. and Rema Tip Top of America, Inc. (Herrick Feinstein, LLP, attorneys; Samuel J. Bazian, on the brief).

PER CURIAM

This appeal from two interlocutory orders, involves a discovery dispute in an unlawful retaliation case. Plaintiff James Whelton sued defendants Rema Tip Top/North America, Inc. (Rema), Rema Tip Top of America, Inc. (Rema America), Rema Tip Top AG (Rema AG), Olafur Gunnarsson, Michael Übelacker, and Stahlgruber Otto Gruber, AG (Stahlgruber) (collectively defendants) alleging he had been threatened with termination and passed over for a promotion in violation of the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14.

Plaintiff appeals from the March 25, 2024 order denying his motion to compel defendants to produce non-party Heinz Reiff for a deposition in New Jersey and requiring plaintiff to subpoena Reiff to take his deposition. Reiff is the chairperson of Rema AG's supervisory board, serves on Stahlgruber's management board, and is a member of Rema America's board of directors.

Reiff is a German citizen and resides in Germany. Plaintiff also appeals from the April 9, 2024 order denying reconsideration of that decision. For the reasons that follow, we reverse both orders and direct the trial court to enter an order compelling defendants to produce Reiff for a deposition in person in New Jersey because we conclude he is under their control.

I.

We derive the salient facts from the motion record. On May 31, 2023, plaintiff filed a second amended complaint, the operative pleading for purposes of this interlocutory appeal. Plaintiff, an attorney, has been the chief legal officer (CLO) and chief of business affairs for Rema and has held those positions for over eleven years. Rema is one of the world's leading manufacturers and distributors of rubber products mainly used in the tire and automotive industries. Rema is a wholly owned subsidiary of Rema America, a holding company. Rema America is a Delaware corporation with a principal place of business in Woodcliff Lake. Rema America is a wholly owned subsidiary of Rema AG, a German corporation. Rema AG is a wholly owned subsidiary of Stahlgruber, also a German corporation.

Gunnarsson was the former chief executive officer (CEO) and sole director of Rema. Gunnarsson was also the managing director, president,

3

secretary, and treasurer of Rema America and an employee of Rema and Stahlgruber. Gunnarsson reported to Reiff and defendant Übelacker, the CEO of Rema AG. Übelacker also serves on Rema AG's supervisory board and is a member of Stahlgruber's board of directors.

At an August 24, 2021 executive meeting attended by plaintiff, Gunnarsson stated that German management was forcing him to step aside from day-to-day operations at the end of that year and wanted him to choose his successor. According to plaintiff, the collective recommendation of the meeting's attendees was that he was the best choice to succeed Gunnarsson.

On October 29, 2021, John Breheny, Rema's chief operating officer, informed plaintiff that Gunnarsson insisted Breheny wire €99,500 to Werner Heumüller, a former executive at the Rema Group in Germany, who was also Gunnarsson's personal friend and "political ally." The wire request was "purportedly based on an invoice for consulting services," which Gunnarsson admitted to Breheny was "fraudulent." Breheny confirmed with plaintiff that Heumüller did not provide consulting services to the company, and Gunnarsson admitted the invoice was "a pretext for payment" because he believed that Reiff and/or Übelacker "screwed" Heumüller on his exit package, and Gunnarsson

4

A-0084-24

wanted to "make it right." Plaintiff objected and advised Breheny against wiring the funds, which were on deposit in a New Jersey bank.

On November 4, 2021, plaintiff, "in accordance with his fiduciary, ethical and professional obligations," and after consulting several attorneys, informed Übelacker of Gunnarsson's "unlawful and fraudulent" conduct. Subsequently, Gunnarsson learned plaintiff had disclosed his wrongful conduct to Übelacker. On both November 5 and 8, 2021, after Gunnarsson learned that plaintiff had told Breheny about Gunnarsson's "unlawful conduct," Gunnarsson advised plaintiff that neither he nor Breheny would "survive this." In addition, plaintiff alleges Gunnarsson advised him that he "had intended to recommend" plaintiff to Rema AG as his successor as Rema's CEO, but plaintiff "had cost himself the opportunity to run the [c]ompany by reporting Gunnarsson's fraudulent conduct."

Plaintiff then sought Übelacker's help, but he "turned a deaf ear" to plaintiff's complaints. According to plaintiff, prior to Gunnarsson's departure for Europe, he informed other Rema employees that plaintiff "would not be able to retain his position upon Gunnarsson's return."

Between November 12 and 27, 2021, Gunnarsson traveled to Germany for previously planned meetings with Rema AG's supervisory board, as well as

5

meetings with Übelacker and Reiff, Übelacker's direct supervisor. While Gunnarsson was in Germany, plaintiff attempted to contact Übelacker, who failed to return his calls. According to plaintiff, by the time Gunnarsson returned from Europe, neither Übelacker nor any other Rema or Rema AG employee had responded to plaintiff's calls or recommendation for an "outside investigation." After blocking the caller ID, plaintiff called Übelacker, who answered the call. Übelacker advised plaintiff he was in a board meeting but "promised" to return the call "in one hour's time," but never did. Plaintiff alleges Übelacker told Gunnarsson to instruct plaintiff "to stop calling Germany."

On December 7, 2021, Gunnarsson allegedly informed plaintiff that he had no future with Rema and advised him to start looking for a new job because Gunnarsson intended to terminate him upon finding plaintiff's replacement. Gunnarsson also told plaintiff to stop calling Germany. Gunnarsson allegedly began interviewing candidates to replace himself as CEO, as well as candidates to replace plaintiff as CLO. After December 2021, Gunnarsson allegedly deprived plaintiff of new assignments and excluded him from meetings, conference calls and other business dealings in which he customarily participated "prior to blowing the whistle" on Gunnarsson's "unlawful,

6

fraudulent conduct." Ultimately, Gunnarsson stopped speaking to plaintiff altogether.

In addition, plaintiff alleges that defendants denied him a bonus in early 2022 in "retaliation" for his protected activities but paid "substantial bonuses" to other "high-level employees." Further, plaintiff alleges defendants denied him a 2022 salary increase while granting increases to other high-level employees and retaliated against him by passing him over for promotion to CEO. In a February 5, 2022 email, Gunnarsson stated he intended to terminate plaintiff's employment because he had reported Gunnarsson's "unlawful activity" to Rema AG. During a February 11, 2022 phone conversation with plaintiff, Gunnarsson stated his reporting of him "had ended [plaintiff's] career with Rema."

On May 24, 2022, plaintiff filed his lawsuit against defendants. Several weeks later, on July 5, 2022, Gunnarsson, Übelacker, and Reiff interviewed an outside candidate to replace Gunnarsson as regional president. The next day, Reiff and Übelacker met with counsel in New York about plaintiff's lawsuit. On August 19, 2022, Rema hired a new employee as regional president. Plaintiff alleges defendants' "retaliatory actions" created a "hostile work environment."

A-0084-24

Plaintiff claims he was passed over for promotion to president and CEO of Rema America and regional president of Rema America in retaliation for his whistleblowing activities. Rather than promoting him as planned, plaintiff alleges defendants split Gunnarsson's position in two and transferred or intended to transfer Gunnarsson's job duties to two other individuals. In his second amended complaint, plaintiff demanded back pay, front pay, compensatory damages for emotional pain, suffering, and humiliation, punitive damages, attorney's fees, and costs.

On October 5, 2023, plaintiff served defendants with a notice of deposition of Reiff in accordance with Rule 4:14[1] to be held by remote videoconference on November 9, 2023. Reiff would not appear on that date. Plaintiff attempted to re-schedule Reiff's deposition and served another notice of deposition on defense counsel requesting Reiff be produced—this time in person—for a deposition on January 10, 2024, at Rema's Woodcliff Lake office, but did not get a response. A week later, plaintiff filed a motion to compel defendants to produce Reiff for a deposition on February 2, 2024, at defense

---

[1] In pertinent part, Rule 4:14-1 provides: . . . "after commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination."

A-0084-24

counsel's New York City office and for sanctions. Defendants counter they were unsuccessful in scheduling Reiff's deposition.

Following oral argument on March 22, 2024, the trial court denied plaintiff's motion to compel defendants to produce Reiff for a deposition. The trial court ruled that plaintiff had to "subpoena" Reiff, finding defendants did not have "control" over Reiff and because he is not a named defendant in the case. The trial court determined under Rule 4:14-1, plaintiff is entitled to depose Reiff "in his individual capacity."

The trial court observed that Reiff's testimony "would not be cumulative" because he has "personal knowledge" of "material facts," in particular related to "comments and conversation[s]" about filling positions. The trial court denied plaintiff's motion to compel and request for sanctions. The March 25, 2024 memorializing order states "[d]efendants [] do not have control over . . . Reiff as he is not a defendant in this case" and goes on to state, "The deposition of . . . Reiff shall be requested via subpoena. The deposition shall take place in New Jersey or a neighboring state that is convenient for all parties."

Plaintiff filed a motion for reconsideration. On April 19, 2024, the trial court entered an order denying the motion for reconsideration. However, the trial court observed it "may not be possible" for plaintiff to secure Reiff's

attendance at a deposition in New Jersey by way of subpoena. We denied plaintiff's motion for leave to appeal on this issue.

On August 2, 2024, the trial court granted plaintiff's motion for leave to file a third amended complaint to add successor liability claims against OWG Beteiligungs AG (OWG), which had acquired all of Stahlgruber's outstanding stock.[2] On September 18, 2024, the trial court granted plaintiff's motion to amend the August 2, 2024 order to permit plaintiff to depose Reiff, who is also the CEO of OWG, on the merits of plaintiff's CEPA claim. The trial court noted "OWG is now a defendant and has control over Reiff." On September 9, 2024, our Supreme Court granted leave to appeal and remanded the appeal to this court for a decision on the merits.

On appeal, plaintiff argues the trial court abused its discretion by requiring him to subpoena Reiff for a deposition knowing Reiff lives in Germany and is beyond the jurisdictional power of a subpoena. Plaintiff asserts the trial court summarily concluded that Reiff was not within defendants' control without performing a robust analysis and considering the D'Agostino[3] factors. Plaintiff

---

[2] According to plaintiff, Stahlgruber merged with OWG in September 2023.

[3] D'Agostino v. Johnson & Johnson, 242 N.J. Super. 267, 273 (App. Div. 1990).

contends the orders under review deprive him of fundamental discovery he is entitled to under the court rules, and the disputed facts demonstrate the corporate defendants' control over Reiff, which is "implicit" under <u>Rule</u> 4:14-2.[4] Plaintiff also asserts the trial court abused its discretion in denying his motion for reconsideration.[5]

---

[4] <u>Rule</u> 4:14-2 provides in pertinent part:

> (a)  Notice.  Except as otherwise provided by <u>R[ule]</u> 4:14-9(b), a party desiring to take the deposition of any person upon oral examination shall give not less than [ten] days notice in writing to every other party to the action.  The notice shall state the time and place for taking the deposition, which shall be reasonably convenient for all parties, and the name and address of each person to be examined, if known, and, if the name is not known a general description sufficient to identify the person or the particular class or group to which the person belongs.  If a defendant fails to appear or answer in any civil action within the time prescribed by these rules, depositions may be taken without notice to that defendant.

[5] Following oral argument before this court, plaintiff filed a motion seeking to supplement the record with a certification authored by plaintiff's counsel about Reiff's deposition and conversations with OWG's counsel about scheduling Reiff's deposition.  We denied the motion on March 6, 2025.

## II.

We review a trial court's discovery order under an abuse of discretion standard. Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). Generally, a reviewing court will "defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." Rivers v. LSC P'ship, 378 N.J. Super. 68, 80 (App. Div. 2005) (citing Payton v. N.J. Tpk. Auth., 148 N.J. 524, 559 (1997)).

An abuse of discretion "arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (internal quotation marks omitted). Reversal is warranted only if "the discretionary act was not premised upon consideration of all relevant factors, was based upon consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005). In contrast, we owe no deference to the trial court's legal conclusions and examine them under a de novo standard of review. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

12

We will not disturb a trial court's denial of a motion for reconsideration under Rule 4:49-2 absent a clear abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021); Kornbleuth v. Westover, 241 N.J. 289, 301 (2020); Hoover v. Wetzler, 472 N.J. Super. 230, 235 (App. Div. 2022). "[An] abuse of discretion only arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554 572 (2005)), and occurs when the trial judge's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 438 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Plaintiff argues the trial court inexplicably found that Reiff's status as a director did not establish the corporate defendants' control over him and misapplied D'Agostino to require plaintiff "to show something more." "Although the [court] rules do not specifically state that a proposed corporate deponent must be under the control of the corporate party in order to require the deponent's presence, such control must exist before a party can be compelled to produce a deponent." D'Agostino, 242 N.J. Super. at 273. Thus, "control by a

13

corporate party over its officers, directors and managing agents is implicit within

the rule." Ibid. (citing R. 4:14-2(c)).

As we explained in D'Agostino:

> R[ule] 4:14-2 sets forth the requirements for notices of depositions, including those to corporate entities. R. 4:14-2(c). While it is true that the rule pertinent to document discovery is not directly applicable, . . . defendants are incorrect in their assertion that the issue of "control" is not relevant to whether they must produce subsidiary executives for depositions. See Pressler & Verniero, [Current N.J. Court Rules], cmt. 3 on R. 4:14-2(c) [(1990)]; Sykes Intern., Ltd. v. Pilch's Poultry Breeding Farms, Inc., 55 F.R.D. 138, 139 (D. Conn. 1972). Although the rules do not specifically state that a proposed corporate deponent must be under the control of the corporate party in order to require the deponent's presence, such control must exist before a party can be compelled to produce a deponent. See Sykes Intern., Ltd., 55 F.R.D. at 139. Therefore, the factor of control by a corporate party over its officers, directors and managing agents is implicit within the rule. See R. 4:14-2(c).
>
> The rules pertaining to subpoenas are set forth in R[ule] 4:14-7 and contain provisions relevant to taking depositions of non-residents. R. 4:14-7(b). These include reasonable time and place requirements. R. 4:14-7(b). The rules pertaining to notices of depositions and compelling discovery are modeled after the Federal Rules of Civil Procedure and are substantially the same. See Pressler & Verniero, cmts. on R. 4:14-1, 4:14-2 and 4:23-1.
>
> [Ibid.]

As plaintiff points out, we rejected the argument that a non-party officer, director, or managing agent must be subpoenaed for a deposition. Moreover, under the New Jersey Court Rules, parties are considered the "directors, executives, and employees" of a corporate defendant. See Pressler & Verniero, cmt. 1 on R. 4:14-2(a) ("As to corporate employees whose attendance may be secured by notice rather than subpoena, see D'Agostino, 242 N.J. Super at 267, holding that a corporate party is required to produce those directors, executives, and employees of its subsidiaries who are under its control.")

Defendants counter they did not have control—prior to the September 18, 2024 order—because there is no evidence to "conclusively demonstrate that Rema AG and Stahlgruber have control over Reiff for deposition purposes." Defendants further aver that the "primary evidence" plaintiff relies on is counsel's attempt to coordinate Reiff's deposition, which would have "streamlined discovery" and "avoided prolonged motion practice." Defendants contend plaintiff's effort was "clearly unsuccessful" as Reiff did not appear for a deposition, and this further demonstrates defendants' "lack of control" over him. We are unpersuaded by defendants' arguments.

The defendants in D'Agostino argued that the foreign subsidiary and its executives were "separate legal entities, the individuals were unrelated to the

15

case . . . and were prohibited from participating in depositions under Swiss law." 242 N.J. Super. at 270. We disagreed, pointing to the fact that defendants were corporate parents of the wholly-owned subsidiary, "own[ed] all the stock of the subsidiary corporations whose executives are subject to depositions, . . . share[d] in financial arrangements[,] and report[ed] back to [defendants'] headquarters in New Jersey." Id. at 276.

Further, we reasoned that "one of the proposed deponents offered a certification in favor of defendants at the outset of the case. Thus, he has already participated in the proceedings." Id. at 275. As a result, there was a "sufficiently close relationship between [defendants] and its wholly-owned subsidiaries to require it to produce the requested foreign-based executives. There is a common identity between officers of [defendants'] various subsidiaries . . . and itself." Id. at 276 (citation omitted).

Here, although Reiff is not a directly named defendant, he serves on the board of directors of several of the named defendants in the case. Moreover, no one disputes that Reiff has knowledge concerning the facts of this case. Consequently, we are satisfied that defendants in the matter under review exercise much more control over Reiff than existed in D'Agostino.

Critically, the record shows Reiff's role in the corporate structure was not one of a neutral, non-party witness. On the contrary, the record contains ample evidence of Reiff's direct oversight of defendants' corporate operations and his supervisory role with the corporate defendants, Übelacker, and Gunnerson. By way of example, plaintiff propounded the following interrogatory with subparts upon Rema:

> 1. [i]dentify all persons having knowledge of facts relevant to this action, and with respect to each such person, set forth the following:
>
> (a) [f]ull name;
>
> (b) [h]ome address, home telephone number, cellular telephone number and email address;
>
> (c) [c]urrent employer, office address, work telephone number and work email address; and
>
> (d) [t]he nature of the information you believe he or she possesses.

Defendant Rema responded:

> Heinz Reiff
>
> • Employer: [Rema AG]; Gruber Strabe 63, 85586 Poing.
>
> • Upon information and belief, . . . Reiff has knowledge and information relating to the facts and defenses of this matter.

A-0084-24

Thus, defendant Rema clearly identified Reiff as an employee of Rema AG, with "knowledge and information" relevant to this matter, which contradicts defendants' contention "nor is Reiff an employee of Rema AG."

Further, at Gunnarson's deposition, the following transpired:

> [Plaintiff's Attorney]: . . . Gunnarson, I've shown you what's been marked as P-70. This is a July 7, 2022 email from Mr. . . . to . . . Übelacker and to you. Do you see that?
>
> [Gunnarsson]: Yes.
>
> [Plaintiff's Attorney]: He's thanking . . . Reiff, . . . Übelacker and you for taking the time to meet with him to discuss the position. Do you see that?
>
> (Witness reviews.)
>
> [Gunnarsson]: Yeah, I don't remember this. I don't remember having met with him on [July 5, 2022].
>
> [Plaintiff's Attorney]: That doesn't refresh your recollection?
>
> [Gunnarsson]: Nope.
>
> [Plaintiff's Attorney]: Okay. After . . . Reiff, . . . Übelacker and you completed the meeting with Mr. . . . , did the three of you discuss Mr. . . . candidacy?
>
> [Gunnarsson]: Yeah, I guess we talked about it. I don't remember the details of it. We went back to the New Jersey office. We had met in the [c]ity.

A-0084-24

[Plaintiff's Attorney]: What was said out loud about Mr. . . . when you discussed him with . . . Reiff and . . . Übelacker?

[Gunnarsson]: I think . . . Übelacker liked Mr. . . . and he was positive about hiring him, yeah.

[Plaintiff's Attorney]: Did . . . Reiff say anything?

[Gunnarsson]: I don't remember.

[Plaintiff's Attorney]: Did you say anything?

[Gunnarsson]: No.

[Plaintiff's Attorney]: You didn't tell them that you wanted to hire Mr. . . . ?

[Gunnarsson]: No.

[Plaintiff's Attorney]: When was the decision made to make an offer to Mr. . . . ?

[Gunnarsson]: I guess somewhere during that meeting. I can't remember.

[Plaintiff's Attorney]: Who made that decision?

[Gunnarsson]: The decision was made by the German management.

[Plaintiff's Attorney]: Did you make—

[Gunnarsson]: Or, should I say, the final decision was made by them. I was involved in the discussions, but the final decision was made by them.

A-0084-24

The record is clear that in July 2022, Reiff, along with Übelacker and Gunnarsson, travelled to New Jersey and New York City to interview a candidate to replace Gunnarsson as CEO, instead of plaintiff. And, Gunnarsson explicitly stated that the final decision to hire his replacement was made by German management, who are Übelacker and Reiff.

In Rema AG's answer to interrogatory number twenty-seven, it stated "neither Rema AG nor Übelacker retaliated against [p]laintiff, as they were not the decisionmakers regarding who would succeed to Gunnarsson's position[,] and had no control over the terms and conditions of [p]laintiff's employment." This response is in direct contradiction to Gunnarsson's deposition testimony, in which he stated that it was "German management" who made the final decision on who to hire as Gunnarsson's replacement.

We are satisfied Reiff had a direct supervisory role over this decision-making process along with Übelacker. The trial court abused its discretion by finding Reiff's status as a director did not establish defendants' corporate control over him for deposition purposes and denying plaintiff's motion to compel defendants to produce Reiff for a deposition. It is unrefuted that the corporate defendants sent Reiff to New York to interview outside candidates proposed by Gunnarsson to replace him and met with counsel regarding plaintiff's lawsuit.

20

As we recognized in D'Agostino, "[w]hen peculiar circumstances exist that warrant the taking of depositions outside the jurisdiction where the deponent resides, or at a location other than the corporation's principal place of business, then a court may order depositions be taken elsewhere." 242 N.J. Super. at 277. We reasoned that these "peculiar circumstances" include "the relative financial burdens of the parties to the litigation," "a sufficiently close relationship" between the corporations to establish "[t]he requisite element of control," [and] whether "taking depositions in New Jersey would result in a substantial disruption of the proposed deponents' lives and work . . . ." Id. at 276-77.

Here, as in D'Agostino, the balancing of the factors weighs in plaintiff's favor. Reiff is a foreign-based employee and corporate officer who defendants have acknowledged has information and knowledge relevant to the issues raised in the second amended complaint and subsequent pleadings. There is no showing on this record that requiring Reiff's deposition to take place in person in New Jersey would be an excessive burden or would interfere with defendants' operations or the enterprise as a whole. Gunnarsson testified that Reiff was involved with hiring his replacement. Given Reiff's status in the corporate conglomerate and role in relation to the litigation as well as the intertwinement of the business entities, we conclude the trial court abused its discretion in

21

finding defendants have no control over him and order he be produced by defendants for a deposition.

In sum, we:

(1) reverse the March 25 and April 19, 2024 orders; and

(2) remand this matter with direction that the trial court enter an order directing defendants to produce Reiff for a deposition within thirty days at defendants' expense in New Jersey at a location and time that is convenient for Reiff and counsel for all parties.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0084-24